**EXHIBIT D**

**TO**

**AMERICAN HOME REALTY NETWORK, INC.'S
OPPOSITION TO PLAINTIFF PREFERRED CAROLINAS, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

_____

PREFERRED CAROLINAS REALTY, INC.,   )
                                            )
                   Plaintiff,        )

v.                                        )
                                            )  Civil Action No. 1:13-cv-00181
                                            )

AMERICAN HOME REALTY NETWORK, INC., )
D/B/A NEIGHBORCITY.COM,             )
                                            )
               Defendant.      )
_____)

## DECLARATION OF CHRISTOPHER R. MILLER

Christopher R. Miller declares as follows:

1. I am over eighteen (18) years of age and am competent to testify as to the matters set forth herein.

2. I am Chief Legal Officer and General Counsel of American Home Realty Network, Inc. ("AHRN"), defendant in the above-captioned matter.

3. I make this Declaration on personal knowledge in support of AHRN's Opposition to the Motion of Plaintiff Preferred Carolinas Realty, Inc. ("PCR") for Partial Summary Judgment.

4. On May 8, 2013, after receiving notice of the this lawsuit claiming infringement of copyrights held by Preferred Carolinas Realty, Inc. ("PCR") I sent a letter to Brian Simpson counsel for PCR advising him among other matters that during

2011 and 2012 PNC had entered into a series of referral agreements with AHRN giving AHRN the right to use PNC's property listing information and releasing AHRN from all claims related to AHRN's use of this information, and requesting that PNC dismiss its lawsuit.  Copies of the agreements were attached to my letter.  As of this date, I have  received no response from Mr. Simpson.   True and accurate copies of my letter to Mr. Simpson and the referenced referral agreements are attached to this Declaration as Exhibit 1.

5.  On March 11, 2013, after this lawsuit had been filed, AHRN received a cease-and-desist letter dated March 5, 2013 from Carolina Multiple Listing Service alleging infringement of its copyrighted property listing data.  A true and accurate copy of that letter is attached to this Declaration as Exhibit 2.  I responded to that letter on March 13, 2013; a true and accurate copy of my responding letter is attached to this Declaration as Exhibit 3.  As of this date, I have not received a response to that letter.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED ON JUNE 14, 2013.


_____
Christopher R. Miller

**EXHIBIT 1**

**TO**

**DECLARATION OF CHRISTOPHER R. MILLER**

 

Christopher R. Miller
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
Phone: (800) 357-3321
222 7th Street, 2nd Floor
San Francisco, CA 94103

May 8, 2013

**<u>VIA EMAIL TO bsimpson@tcdg.com</u>**
Bryan T. Simpson
Attorney at Law
Teague, Campbell, Dennis & Gorham
4800 Six Forks Road, Suite 300
Raleigh, NC 27619-9207

   RE: *Preferred Carolinas Realty Inc. v. American Home Realty Inc. d/b/a*
      *Neighborcity.com (1:13-CV-00181)*

Dear Mr. Simpson:

   I am writing with reference to the above-entitled action to request, pursuant to the requirements of FRCP Rule 11, and for the reasons set forth below, that you dismiss this action with prejudice before the time required for American Home Realty Network, Inc. ("AHRN") to file a responsive pleading, presently May 15, 2013.

   This Complaint, which has been brought in the District Court for the Central District of North Carolina, is defective in two material respects. The first ground is jurisdictional in nature. American Home Realty Network, Inc. has no presence in North Carolina sufficient to provide personal jurisdiction, either general or specific, with regard to the allegations set forth in the Complaint. Although the Complaint alleges that "AHRN was registered with the North Carolina Secretary of State to do business in North Carolina when it engaged in at least some of the acts at issue in this Complaint," a simple check of the corporate information available online at the North Carolina Secretary of State website, had you taken the time to view it, would have shown (as demonstrated by the attached documents) that AHRN has not been registered to do business in North Carolina in any form since 2008. AHRN does not have, and has not had, during any time relevant to the acts at issue in the Complaint, an office or other physical presence in North Carolina; our sole physical office is located in San Francisco, California. Members of the public, including residents of North Carolina, who use the Internet to view our website, www.neighborcity.com, are retrieving data from servers located outside of the State of North Carolina. To the extent that data is displayed on those servers which your client claims violates

their copyrights, that data is not obtained from any source in North Carolina. There simply is no sufficient ground upon which to allege, in good faith, that AHRN is subject to jurisdiction in North Carolina.

The second ground upon which I urge the dismissal of the Complaint is substantive. It may be that your client has forgotten, or at least neglected to inform you, that it has entered into agreements with AHRN that cover the time of all of the acts alleged in the Complaint and which grant AHRN permission to use the listing data which forms the basis of the Complaint. I have attached six exemplars of such agreements which were executed as follows:

1. 6-16-2011 Referral Agreement ("RA") by Linda Mitchell on behalf of Joe Pinnix of Prudential Carolinas Real Estate ("PCR")
2. 10-4-11 RA by Juanita Isbell on behalf of Thomas Maier of PCR
3. 12-9-2011 RA by Linda Mitchell on behalf of Thomas Maier of PCR
4. 12-9-2011 RA by Tracy Gentry on behalf of Al Mirabelli of PCR
5. 7-2-12 RA by Gregg Cantagallo on behalf of Linda Goetz of PCR
6. 10-9-12 RA by Marlene Peeler, Managing Broker, PCR

Each of these agreements executed on behalf of PCR provides that:

> "By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which you have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc, from any claims related to such use of this information."

Each agreement also provides that:

> "You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker and/or agent in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so;"

It is readily apparent that any one of these agreements is sufficient to establish that AHRN has received permission from PCR to use its listing data in the manner in which your Complaint

alleges to be copyright infringement.  Inasmuch as AHRN is a permissive user of that data, without any stated restrictions on how that data may be displayed, no action for copyright infringement may be maintained.

In addition to the issues set forth in the foregoing paragraphs, I believe, as we have stated in the ongoing litigation with MRIS and RMLS to which you have referred in the Complaint, that we would have substantial defenses, including but not limited to the defense of misuse of copyright.  As you are aware, we have offered to license data from MRIS and RMLS, as well as all Home Services of America brokerages, , and have been summarily refused.  Additionally, I am quite confident that these copyrights which form the basis of the Complaint were filed for the sole purpose of undertaking this litigation. There is no question in my mind that the NAR, many MLS organizations and brokerages, including PCR, are making a concerted effort to maintain a monopoly on the ownership and use of property listing data, and are refusing to consider any business arrangement with AHRN for purely anti-competitive reasons, essentially engaging in a horizontal boycott.

These actions, in addition to being violations of anti-trust laws, are contrary to both the letter and spirit of the settlement in *US v. National Association of Realtors* (Civil Action No. 05 C 5140), in which the Department of Justice made very clear its intention that NAR cease to engage in actions and promote policies that discriminate against innovative brokers who use the Internet to provide high-quality, low-priced brokerage services to consumers.  Should we be forced to litigate these copyright issues, you may be assured that your client, and perhaps others, will be defending anti-trust claims.  You may be aware that your client's parent company, American Home Services, is presently such a third-party defendant in Minnesota.

For all of the foregoing reasons, I believe that you must conclude that there is no good-faith basis upon which to continue to prosecute this action, and I therefore request that you file an immediate dismissal with prejudice.

In light of the fact that our response is due on 5/15/13, I ask that you respond to this request no later than this Friday, May 10, 2013. I look forward to receiving your response at your earliest convenience.

Very truly yours,

*Christopher R. Miller*

General Counsel
American Home Realty Network, Inc.

# American Home Realty Network, Inc.
# Standard Referral Agreement

Form Referral-1 (rev. 8-12)

Control No.: 201210090928

Original Execution Date: 10-09-2012

**Referring Broker**

American Home Realty Network, Inc.

222 7th Street

2nd Floor

San Francisco, CA 94103

Ph: 1-800-357-3321          1-800-357-3321 FREE

Fax: 1-866-349-7423

**Receiving Broker & Agent**

Brokerage Name: Prudential Carolinas Realty

Managing Broker Name: Marlene Peeler

Managing Broker Phone: 704-472-0200          704-472-0200 FREE

Managing Broker E-mail: marlene@prushelby.com

From time to time American Home Realty Network, Inc. ("We" or "Us"), the Originating Broker, will invite Receiving Broker and/or Agent ("You") to cooperate with Us in the delivery of services to potential real estate buyers, sellers and renters ("Customer") to whom We have procured through our websites and direct contact. Upon Your execution and return of this Agreement we will commence the exchange of necessary information for You to deliver advisory services to our Customers. Your efforts to assist our Customers will be governed by, and subject to, this Co-Cooperating Standard Agreement ("Agreement").

With respect to any Customer, their family member, or any related party (familial or not) introduced as a result of the original referral to the Customer for whom We invite and You agree to provide brokerage services, You agree to:

1. Share with Us thirty (30%) percent of all gross commissions ("Referral Fee") due to You for each side of the transaction where You represent the Customer, whether the Customer buys,

and/or sells and/or leases/rents any real estate, for a period of twenty-four (24) months following your acceptance of the Customer ("Referral Period"); the term "gross commissions" refers to the amount due to the receiving broker in any transaction as defined above, inclusive of commissions due to the Agent representing the Customer. In the event a receiving broker contends that any referral was not authorized or accepted by the Brokerage, the receiving Agent executing the Referral Agreement shall be liable for payment of the entire referral fee due to Us, and by acceptance of this Referral Agreement agrees to be responsible for payment of any fees due to Us under the terms of this Agreement.

2. Report and pay to Us a Referral Fee on any and all additional transactions the Customer executes with You within the Referral Period;

3. Provide the Customer any additional disclosure documents required by the state real estate laws to which You are subject that have not already been provided to the Customer by Us, secure the Customer's acknowledgment of receipt of such disclosures, and send Us an electronic copy;

4. Provide Us relevant details of the contract within 2 business days of an agreement of sale (i.e. "contract") being executed; You do not have to send the actual contract to Us unless specifically requested to do so by Us;

5. Provide the closing agent (and/or title company, if applicable) with a copy to Us specific written instructions in the form of a Broker Demand for Payment to: (a) divide all commissions we are collectively entitled to receive in accordance with this Agreement; (b) pay the Referral Fee to Us directly out of escrow; (c) send Us a copy of the closing statement;

6. Should You fail to perform your responsibility in Sections 4 & 5, You will pay Us as additional compensation 50% of all sums otherwise due Us plus all costs of collection;

7. Adhere to the reporting and performance standards promulgated by Us from time to time including, among other things, the submission of "Progress Reports" and the reporting of all offers You submit or receive on behalf of the Customer, whether rejected or accepted;

8. Provide Us with written notification if the Recipient Agent ceases to keep their real estate license with You;

9. Provide Us with all the consents, approvals and property information to list the Customer's property on any of our websites;

10. To the extent necessary to fund the commission division stated above, this Agreement constitutes an assignment of any interests in any commission/fees either of us earn from a transaction for a Customer for whom We have agreed to cooperate;

11. We agree that either of Us may directly contact the closing agent to monitor the transaction and direct the division of the commission as provided above;

12. The term of this Agreement commences upon execution by You and shall continue until terminated by either party upon thirty (30) days prior written notice; however, either party may terminate this Agreement immediately upon written notice if the other party (i) is the object of a petition in bankruptcy that is not dismissed within sixty (60) days of filing; (ii) is no longer licensed as an active real estate broker; (iii) is the object of criminal prosecution, a disciplinary proceeding pursuant to the real estate license law under which the party is licensed, or a claim that the party has violated consumer protection laws, equal housing opportunity laws, or engaged in any conduct constituting moral turpitude, (iv) is You and You fail materially to comply with Our reporting and performance standards as referenced in Sections 3 & 4 of this Agreement. Notwithstanding the foregoing, this Agreement shall continue with respect to Customers We and You have agreed to provide cooperating services for the balance of the 24-month period following each acceptance;

13. You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker and/or agent in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so; (iv) in the event You execute this Agreement and do not have authority to bind your Brokerage as represented, You agree to be personally liable for any fees due to Us as set forth in Paragraph 1 above; (v) You or any brokerage company with which You are affiliated, are not currently the object of any bankruptcy proceeding, disciplinary proceeding before any real estate commission, department or agency, or any criminal proceeding; (vi) You or the brokerage company with

which You are affiliated, have and will maintain so long as this Agreement is in effect professional liability insurance with aggregate annual liability limits of at least $1,000,000 or the minimum liability insurance required by your state's licensing regulations.

14. You agree to defend, indemnify and hold Us harmless from any damages, costs, expenses, judgments or attorneys fees and litigation costs or expenses arising from any allegations asserted by a third party, including a Customer, (a "Claim") that if proven to be true would constitute a breach of your duties, obligations, warranties or representations under this Agreement

15. This is an agreement for the performance of personal services and may not be assigned by either party without the express written consent of the other party, which the other party may withhold in its sole discretion. If You assign this agreement by the act of passing a client referral to another agent or brokerage without our express written consent, You will be in breach of this Agreement. Because of the difficulty in ascertaining the nature and amount of actual damages in such instances, You agree that We will be entitled to receive the amount of $2,000.00 as liquidated damage for each such occurrence. Notwithstanding the foregoing, this Agreement may be assigned by Us without Your prior consent incident to Our merger with another company, or Our sale of all, or substantially all, of Our assets to another person or entity.

16. You agree that the place of execution and performance of this Agreement is the State of California, City and County of San Francisco, and by executing and accepting referrals under this Agreement consent to jurisdiction of the State and Federal Courts for the County of San Francisco and the Northern District of California.

17. This Agreement, and any disputes arising under or in connection with this Agreement shall be governed by the laws of the State of California, including its conflict of law provisions.

**- End of Text -**
## Proof of Acceptance

By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc. from any claims related to such use of this information.

**By American Home Realty Network, Inc.**

Christina Louise Case, Designated Officer (License #01146539)

**By Cooperating Broker:**

Brokerage Name: Prudential Carolinas Realty

Managing Broker Name: Marlene Peeler

**Originally accepted on behalf of Cooperating Broker by:**

Agent Name: MARLENE PEELER

Agent Phone: 704-472-0200          704-472-0200 FREE

Agent E-mail: marlene@prushelby.com

Agent License #: 45179

Date and Time accepted: 2012-10-09 09:28:30

Agent Originating Computer Network Address: 70.60.110.116

You'll need Skype Credit

# American Home Realty Network, Inc.
# Co-Cooperating Standard Agreement

Form CoOp-1 (12-6-10)

Control No.: 201106161347

Date: 06-16-2011

**Originating Broker**

American Home Realty Network, Inc. d/b/a NeighborCity

222 7th Street

2nd Floor

San Francisco, CA 94103

Ph: 1-800-357-3321          1-800-357-3321 FREE

Fax: 1-866-349-7423

Cooperating Broker

Brokerage Name: Prudential Carolinas Realty

Broker Name: Joe Pinnix

Ph: 3369964256

Fax:

E-mail: joe.pinnix@prucarolinas.com

Recipient Agent: Linda Mitchell

Phone: 3363454046

Email: linselhm@aol.com

From time to time American Home Realty Network, Inc. ("We" or "Us"), the Originating Broker, will invite Cooperating Broker ("You") to cooperate with Us in the delivery of services to potential real estate buyers or sellers to whom We have procured through our websites and direct contact with such customers by our agents. Upon Your execution and return of this Agreement we will commence the exchange of information necessary for You to deliver advisory services to Our customers. Your efforts to assist Our customers will be governed by, and subject to, this Co-Cooperating Standard Agreement.

With respect to any Customer, his/her family member, or any related party (familial or not) introduced as a result of the original referral to the Customer for whom We invite and You agree to provide additional brokerage services:

1. You agree to share with Us thirty (30%) percent of all gross commissions received or due from any brokerage services You provide to the Customer, whether acquiring, selling or leasing any real estate, for a period of twenty-four (24) months following Your acceptance of the customer;

2. Become an additional broker-party to the representation agreement between Us and the Customer if there is one, but if not, then enter into a representation agreement with the Customer and provide the Customer with any additional disclosure documents required by the state real estate license law to which You are subject that have not already been provided to the Customer by Us, secure the Customer's acknowledgment of receipt of such disclosures, and send Us an electronic copy within 48 hours;

3. Within 48 hours after an agreement of sale (i.e. "contract") has been executed, provide Us with (a) an electronic copy of such contract with all amendments, riders, disclosure forms, addenda, and inspection reports, and (b) the name and contact information of the closing agent;

4. Within 3 business days of the closing provide the closing agent with specific written instructions to: (a) divide all commissions we are collectively entitled to receive in accordance with this agreement; (b) list Us as a commission payee on the HUD-1 or other closing statement; (c) remit the commissions directly to each of us as stated on the closing statement; and (d) send Us an electronic copy of the closing statement;

5. Should You fail to perform your responsibility in Sections 3 & 4, You will pay Us as additional compensation 50% of all sums otherwise due Us plus all costs of collection. You acknowledge that American Home Realty Network, Inc. reserves the right to report to any and all credit bureaus including commercial credit bureaus if Cooperating Broker or Agent fail to fulfill obligations specified in this Agreement, which may affect personal and or commercial credit score;

6. Adhere to the reporting and performance standards promulgated by Us from time to time concerning, among other things, the level of service and responsiveness to Our Customers;

7. Provide Us with all the consents, approvals and property information to list the Customer's property on any of Our websites.

8. To the extent necessary to fund the commission division stated above, this Agreement constitutes an assignment of any interests in any commission/fees either of us earn from a transaction for a Customer for whom We have agreed to cooperate;

9. We agree that either of Us may directly contact the closing agent to monitor the transaction and direct the division of the commission as provided above;

10. The term of this Agreement commences upon execution by You and shall continue until terminated by either party upon thirty (30) days prior written notice; however, either party may terminate this agreement immediately upon written notice if the other party (i) is the object of a petition in bankruptcy that is not dismissed within sixty (60) days of filing; (ii) is no longer licensed as an active real estate broker; (iii) is the object of criminal prosecution, a disciplinary proceeding pursuant to the real estate license law under which the party is licensed, or a claim that the party has violated consumer protection laws, equal housing opportunity laws, or engaged in any conduct constituting moral turpitude, (iv) is You and You fail materially to comply with Our reporting and performance standards as referenced in Sections 3 & 4 of this Agreement. Notwithstanding the foregoing, this Agreement shall continue with respect to Customers We and You have agreed to provide cooperating services for the balance of the 24-month period following each acceptance;

11. You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so; (iv) You or any brokerage company with which You are affiliated, are not currently the object of any bankruptcy proceeding, disciplinary proceeding before any real estate commission, department or agency, or any criminal proceeding; (v) You or the brokerage company with which You are affiliated, have and will maintain so long as this Agreement is in effect professional liability insurance with aggregate annual liability limits of at least $1,000,000;

12. You agree to defend, indemnify and hold Us harmless from any damages, costs, expenses, judgments or attorneys fees and litigation costs or expenses arising from any

allegations asserted by a third party, including a Customer, (a "Claim") that if proven to be true would constitute a breach of your duties, obligations, warranties or representations under this Agreement;

13. This is an agreement for the performance of personal services and may not be assigned by either party without the express written consent of the other party, which the other party may withhold in its sole discretion. Notwithstanding the foregoing, this Agreement may be assigned by Us without Your prior consent incident to Our merger with another company, or Our sale of all, or substantially all, of Our assets to another person or entity;

14. All parties agree that this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of California. The parties each agree that sole and exclusive jurisdiction and venue for any action or litigation arising from or relating to this Agreement shall be San Francisco County, California;

15. Both parties agree to accept this agreement in its electronic format in lieu of a paper format. Cooperating Broker and Agent both acknowledge that by clicking Accept, Submit, or another button which digitally accepts the terms and conditions of this Agreement, that this Agreement becomes binding and in full force and effect;

**- End of Text -**
## Proof of Acceptance

By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc. from any claims related to such use of this information.

American Home Realty Network, Inc.
By: Christina Louise Case, Managing Broker
CA License#: 01146539

Ph: 1(800)-357-3321       1(800)-357-3321 FREE

Proof Of Acceptance by Receiving

Broker Name: Joe Pinnix

Brokerage Name: Prudential Carolinas Realty

License Number.: 75412


Time Stamp: 2011-06-16 13:47:50

Originating Computer Network Address: 66.255.107.46

You'll need Skype Credit

# American Home Realty Network, Inc.
# Co-Cooperating Standard Agreement

Form CoOp-1 (rev. 06-11)

Control No.: 201112091138

Executed Date: 12-09-2011

**Originating Broker**

American Home Realty Network, Inc. d/b/a NeighborCity

222 7th Street

2nd Floor

San Francisco, CA 94103

Ph: 1-800-357-3321          1-800-357-3321 FREE

Fax: 1-866-349-7423

Cooperating Broker & Agent:

Brokerage Name: Prudential Carolinas Realty K-ville

Managing Broker Name: Thomas Maier

Managing broker Phone: 336-655-6641          336-655-6641 FREE

Managing Broker E-mail: thomas.maier@prucarolinas.com


Recipient Agent:

Recipient Agent Name: Linda Mitchell

Recipient Agent Phone: (336) 345-4046          (336) 345-4046 FREE

Recipient Agent E-mail: linselhm@aol.com

Recipient License #: 75412


    From time to time American Home Realty Network, Inc. ("We" or "Us"), the Originating Broker, will invite Cooperating Broker ("You") to cooperate with Us in the delivery of services to potential real estate buyers, sellers and renters ("Customer") to whom We have procured through our websites and direct contact. Upon Your execution and return of this Agreement we will commence the exchange of necessary information for You to deliver advisory services to our Customers. Your efforts to assist our Customers will be governed by, and subject to, this Co-Cooperating Standard Agreement ("Agreement").

With respect to any Customer, their family member, or any related party (familial or not) introduced as a result of the original referral to the Customer for whom We invite and You agree to provide additional brokerage services, You agree to:

1. Share with Us thirty (30%) percent of all gross commissions ("Referral Fee") due to You for each side of the transaction where You represent the Customer, whether the Customer buys, and/or sells and/or leases/rents any real estate, for a period of twenty-four (24) months following your acceptance of the Customer ("Referral Period");

2. Report and pay to Us a Referral Fee on any and all additional transactions the Customer executes with You within the Referral Period;

3. Provide the Customer any additional disclosure documents required by the state real estate laws to which You are subject that have not already been provided to the Customer by Us, secure the Customer's acknowledgment of receipt of such disclosures, and send Us an electronic copy;

4. Provide Us relevant details of the contract within 2 business days of an agreement of sale (i.e. "contract") being executed;

5. Provide the closing agent (and/or title company, if applicable) with a copy to Us specific written instructions in the form of a Broker Demand for Payment to: (a) divide all commissions we are collectively entitled to receive in accordance with this Agreement; (b) pay the Referral Fee to Us directly out of escrow; (c) send Us a copy of the closing statement;

6. Should You fail to perform your responsibility in Sections 4 & 5, You will pay Us as additional compensation 50% of all sums otherwise due Us plus all costs of collection;

7. Adhere to the reporting and performance standards promulgated by Us from time to time including, among other things, the submission of "Progress Reports" and the reporting of all offers You submit on behalf of the Customer, whether rejected or accepted;

8. Provide Us with written notification if the Recipient Agent ceases to keep their real estate license with You;

9. Provide Us with all the consents, approvals and property information to list the Customer's property on any of our websites;

10. To the extent necessary to fund the commission division stated above, this Agreement constitutes an assignment of any interests in any commission/fees either of us earn from a transaction for a Customer for whom We have agreed to cooperate;

11. We agree that either of Us may directly contact the closing agent to monitor the transaction and direct the division of the commission as provided above;

12. The term of this Agreement commences upon execution by You and shall continue until terminated by either party upon thirty (30) days prior written notice; however, either party may terminate this Agreement immediately upon written notice if the other party (i) is the object of a petition in bankruptcy that is not dismissed within sixty (60) days of filing; (ii) is no longer licensed as an active real estate broker; (iii) is the object of criminal prosecution, a disciplinary proceeding pursuant to the real estate license law under which the party is licensed, or a claim that the party has violated consumer protection laws, equal housing opportunity laws, or engaged in any conduct constituting moral turpitude, (iv) is You and You fail materially to comply with Our reporting and performance standards as referenced in Sections 3 & 4 of this Agreement. Notwithstanding the foregoing, this Agreement shall continue with respect to Customers We and You have agreed to provide cooperating services for the balance of the 24-month period following each acceptance;

13. You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so; (iv) You or any brokerage company with which You are affiliated, are not currently the object of any bankruptcy proceeding, disciplinary proceeding before any real estate commission, department or agency, or any criminal proceeding; (v) You or the brokerage company with which You are affiliated, have and will maintain so long as this Agreement is in effect professional liability insurance with aggregate annual liability limits of at least $1,000,000

14. You agree to defend, indemnify and hold Us harmless from any damages, costs, expenses, judgments or attorneys fees and litigation costs or expenses arising from any

allegations asserted by a third party, including a Customer, (a "Claim") that if proven to be true would constitute a breach of your duties, obligations, warranties or representations under this Agreement

15. This is an agreement for the performance of personal services and may not be assigned by either party without the express written consent of the other party, which the other party may withhold in its sole discretion. Notwithstanding the foregoing, this Agreement may be assigned by Us without Your prior consent incident to Our merger with another company, or Our sale of all, or substantially all, of Our assets to another person or entity.

**- End of Text -**
## Proof of Acceptance

By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc. from any claims related to such use of this information.

**American Home Realty Network, Inc.**
By: Christina Louise Case, Designated Officer (License #01146539)
Date: 2011-12-09 11:38:45

**Cooperating Broker:**
By: Prudential Carolinas Realty K-ville
Name: Thomas Maier
Date: 2011-12-09 11:38:45

Time Stamp: 2011-12-09 11:38:45
Originating Computer Network Address: 66.255.107.46

You'll need Skype Credit

# American Home Realty Network, Inc.
# Co-Cooperating Standard Agreement

Form CoOp-1 (rev. 06-11)

Control No.: 201112091611

Executed Date: 12-09-2011

**Originating Broker**

American Home Realty Network, Inc. d/b/a NeighborCity

222 7th Street

2nd Floor

San Francisco, CA 94103

Ph: 1-800-357-3321          1-800-357-3321 FREE

Fax: 1-866-349-7423

Cooperating Broker & Agent:

Brokerage Name: Prudential Carolinas Realty

Managing Broker Name: Al Mirabelli

Managing broker Phone: 704-897-2505          704-897-2505 FREE

Managing Broker E-mail: al.mirabelli@prucarolinas.com

Recipient Agent:

Recipient Agent Name: Tracy G Gentry

Recipient Agent Phone: 704-458-4600          704-458-4600 FREE

Recipient Agent E-mail: tracy.gentry@prucarolinas.com

Recipient License #:

    From time to time American Home Realty Network, Inc. ("We" or "Us"), the Originating Broker, will invite Cooperating Broker ("You") to cooperate with Us in the delivery of services to potential real estate buyers, sellers and renters ("Customer") to whom We have procured through our websites and direct contact. Upon Your execution and return of this Agreement we will commence the exchange of necessary information for You to deliver advisory services to our Customers. Your efforts to assist our Customers will be governed by, and subject to, this Co-Cooperating Standard Agreement ("Agreement").

With respect to any Customer, their family member, or any related party (familial or not) introduced as a result of the original referral to the Customer for whom We invite and You agree to provide additional brokerage services, You agree to:

1. Share with Us thirty (30%) percent of all gross commissions ("Referral Fee") due to You for each side of the transaction where You represent the Customer, whether the Customer buys, and/or sells and/or leases/rents any real estate, for a period of twenty-four (24) months following your acceptance of the Customer ("Referral Period");

2. Report and pay to Us a Referral Fee on any and all additional transactions the Customer executes with You within the Referral Period;

3. Provide the Customer any additional disclosure documents required by the state real estate laws to which You are subject that have not already been provided to the Customer by Us, secure the Customer's acknowledgment of receipt of such disclosures, and send Us an electronic copy;

4. Provide Us relevant details of the contract within 2 business days of an agreement of sale (i.e. "contract") being executed;

5. Provide the closing agent (and/or title company, if applicable) with a copy to Us specific written instructions in the form of a Broker Demand for Payment to: (a) divide all commissions we are collectively entitled to receive in accordance with this Agreement; (b) pay the Referral Fee to Us directly out of escrow; (c) send Us a copy of the closing statement;

6. Should You fail to perform your responsibility in Sections 4 & 5, You will pay Us as additional compensation 50% of all sums otherwise due Us plus all costs of collection;

7. Adhere to the reporting and performance standards promulgated by Us from time to time including, among other things, the submission of "Progress Reports" and the reporting of all offers You submit on behalf of the Customer, whether rejected or accepted;

8. Provide Us with written notification if the Recipient Agent ceases to keep their real estate license with You;

9. Provide Us with all the consents, approvals and property information to list the Customer's property on any of our websites;

10. To the extent necessary to fund the commission division stated above, this Agreement constitutes an assignment of any interests in any commission/fees either of us earn from a transaction for a Customer for whom We have agreed to cooperate;

11. We agree that either of Us may directly contact the closing agent to monitor the transaction and direct the division of the commission as provided above;

12. The term of this Agreement commences upon execution by You and shall continue until terminated by either party upon thirty (30) days prior written notice; however, either party may terminate this Agreement immediately upon written notice if the other party (i) is the object of a petition in bankruptcy that is not dismissed within sixty (60) days of filing; (ii) is no longer licensed as an active real estate broker; (iii) is the object of criminal prosecution, a disciplinary proceeding pursuant to the real estate license law under which the party is licensed, or a claim that the party has violated consumer protection laws, equal housing opportunity laws, or engaged in any conduct constituting moral turpitude, (iv) is You and You fail materially to comply with Our reporting and performance standards as referenced in Sections 3 & 4 of this Agreement. Notwithstanding the foregoing, this Agreement shall continue with respect to Customers We and You have agreed to provide cooperating services for the balance of the 24-month period following each acceptance;

13. You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so; (iv) You or any brokerage company with which You are affiliated, are not currently the object of any bankruptcy proceeding, disciplinary proceeding before any real estate commission, department or agency, or any criminal proceeding; (v) You or the brokerage company with which You are affiliated, have and will maintain so long as this Agreement is in effect professional liability insurance with aggregate annual liability limits of at least $1,000,000

14. You agree to defend, indemnify and hold Us harmless from any damages, costs, expenses, judgments or attorneys fees and litigation costs or expenses arising from any

allegations asserted by a third party, including a Customer, (a "Claim") that if proven to be true would constitute a breach of your duties, obligations, warranties or representations under this Agreement

15. This is an agreement for the performance of personal services and may not be assigned by either party without the express written consent of the other party, which the other party may withhold in its sole discretion. Notwithstanding the foregoing, this Agreement may be assigned by Us without Your prior consent incident to Our merger with another company, or Our sale of all, or substantially all, of Our assets to another person or entity.

**- End of Text -**
## Proof of Acceptance

By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc. from any claims related to such use of this information.

**American Home Realty Network, Inc.**
By: Christina Louise Case, Designated Officer (License #01146539)
Date: 2011-12-09 16:11:29

**Cooperating Broker:**
By: Prudential Carolinas Realty
Name: Al Mirabelli
Date: 2011-12-09 16:11:29

Time Stamp: 2011-12-09 16:11:29
Originating Computer Network Address: 66.255.106.102

You'll need Skype Credit

# American Home Realty Network, Inc.
## Standard Referral Agreement

Form Referral-1 (rev. 8-12)

Control No.: 201210090928

Original Execution Date: 10-09-2012

**Referring Broker**

American Home Realty Network, Inc.

222 7th Street

2nd Floor

San Francisco, CA 94103

Ph: 1-800-357-3321      1-800-357-3321 FREE

Fax: 1-866-349-7423

**Receiving Broker & Agent**

Brokerage Name: Prudential Carolinas Realty

Managing Broker Name: Marlene Peeler

Managing Broker Phone: 704-472-0200      704-472-0200 FREE

Managing Broker E-mail: marlene@prushelby.com

    From time to time American Home Realty Network, Inc. ("We" or "Us"), the Originating Broker, will invite Receiving Broker and/or Agent ("You") to cooperate with Us in the delivery of services to potential real estate buyers, sellers and renters ("Customer") to whom We have procured through our websites and direct contact. Upon Your execution and return of this Agreement we will commence the exchange of necessary information for You to deliver advisory services to our Customers. Your efforts to assist our Customers will be governed by, and subject to, this Co-Cooperating Standard Agreement ("Agreement").

    With respect to any Customer, their family member, or any related party (familial or not) introduced as a result of the original referral to the Customer for whom We invite and You agree to provide brokerage services, You agree to:

    1. Share with Us thirty (30%) percent of all gross commissions ("Referral Fee") due to You for each side of the transaction where You represent the Customer, whether the Customer buys,

and/or sells and/or leases/rents any real estate, for a period of twenty-four (24) months following your acceptance of the Customer ("Referral Period"); the term "gross commissions" refers to the amount due to the receiving broker in any transaction as defined above, inclusive of commissions due to the Agent representing the Customer. In the event a receiving broker contends that any referral was not authorized or accepted by the Brokerage, the receiving Agent executing the Referral Agreement shall be liable for payment of the entire referral fee due to Us, and by acceptance of this Referral Agreement agrees to be responsible for payment of any fees due to Us under the terms of this Agreement.

2. Report and pay to Us a Referral Fee on any and all additional transactions the Customer executes with You within the Referral Period;

3. Provide the Customer any additional disclosure documents required by the state real estate laws to which You are subject that have not already been provided to the Customer by Us, secure the Customer's acknowledgment of receipt of such disclosures, and send Us an electronic copy;

4. Provide Us relevant details of the contract within 2 business days of an agreement of sale (i.e. "contract") being executed; You do not have to send the actual contract to Us unless specifically requested to do so by Us;

5. Provide the closing agent (and/or title company, if applicable) with a copy to Us specific written instructions in the form of a Broker Demand for Payment to: (a) divide all commissions we are collectively entitled to receive in accordance with this Agreement; (b) pay the Referral Fee to Us directly out of escrow; (c) send Us a copy of the closing statement;

6. Should You fail to perform your responsibility in Sections 4 & 5, You will pay Us as additional compensation 50% of all sums otherwise due Us plus all costs of collection;

7. Adhere to the reporting and performance standards promulgated by Us from time to time including, among other things, the submission of "Progress Reports" and the reporting of all offers You submit or receive on behalf of the Customer, whether rejected or accepted;

8. Provide Us with written notification if the Recipient Agent ceases to keep their real estate license with You;

9. Provide Us with all the consents, approvals and property information to list the Customer's property on any of our websites;

10. To the extent necessary to fund the commission division stated above, this Agreement constitutes an assignment of any interests in any commission/fees either of us earn from a transaction for a Customer for whom We have agreed to cooperate;

11. We agree that either of Us may directly contact the closing agent to monitor the transaction and direct the division of the commission as provided above;

12. The term of this Agreement commences upon execution by You and shall continue until terminated by either party upon thirty (30) days prior written notice; however, either party may terminate this Agreement immediately upon written notice if the other party (i) is the object of a petition in bankruptcy that is not dismissed within sixty (60) days of filing; (ii) is no longer licensed as an active real estate broker; (iii) is the object of criminal prosecution, a disciplinary proceeding pursuant to the real estate license law under which the party is licensed, or a claim that the party has violated consumer protection laws, equal housing opportunity laws, or engaged in any conduct constituting moral turpitude, (iv) is You and You fail materially to comply with Our reporting and performance standards as referenced in Sections 3 & 4 of this Agreement. Notwithstanding the foregoing, this Agreement shall continue with respect to Customers We and You have agreed to provide cooperating services for the balance of the 24-month period following each acceptance;

13. You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker and/or agent in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so; (iv) in the event You execute this Agreement and do not have authority to bind your Brokerage as represented, You agree to be personally liable for any fees due to Us as set forth in Paragraph 1 above; (v) You or any brokerage company with which You are affiliated, are not currently the object of any bankruptcy proceeding, disciplinary proceeding before any real estate commission, department or agency, or any criminal proceeding; (vi) You or the brokerage company with

which You are affiliated, have and will maintain so long as this Agreement is in effect professional liability insurance with aggregate annual liability limits of at least $1,000,000 or the minimum liability insurance required by your state's licensing regulations.

14. You agree to defend, indemnify and hold Us harmless from any damages, costs, expenses, judgments or attorneys fees and litigation costs or expenses arising from any allegations asserted by a third party, including a Customer, (a "Claim") that if proven to be true would constitute a breach of your duties, obligations, warranties or representations under this Agreement

15. This is an agreement for the performance of personal services and may not be assigned by either party without the express written consent of the other party, which the other party may withhold in its sole discretion. If You assign this agreement by the act of passing a client referral to another agent or brokerage without our express written consent, You will be in breach of this Agreement. Because of the difficulty in ascertaining the nature and amount of actual damages in such instances, You agree that We will be entitled to receive the amount of $2,000.00 as liquidated damage for each such occurrence. Notwithstanding the foregoing, this Agreement may be assigned by Us without Your prior consent incident to Our merger with another company, or Our sale of all, or substantially all, of Our assets to another person or entity.

16. You agree that the place of execution and performance of this Agreement is the State of California, City and County of San Francisco, and by executing and accepting referrals under this Agreement consent to jurisdiction of the State and Federal Courts for the County of San Francisco and the Northern District of California.

17. This Agreement, and any disputes arising under or in connection with this Agreement shall be governed by the laws of the State of California, including its conflict of law provisions.

**- End of Text -**
## Proof of Acceptance

By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc. from any claims related to such use of this information.

**By American Home Realty Network, Inc.**

Christina Louise Case, Designated Officer (License #01146539)

**By Cooperating Broker:**

Brokerage Name: Prudential Carolinas Realty

Managing Broker Name: Marlene Peeler

**Originally accepted on behalf of Cooperating Broker by:**

Agent Name: MARLENE PEELER

Agent Phone: 704-472-0200        704-472-0200 FREE

Agent E-mail: marlene@prushelby.com

Agent License #: 45179

Date and Time accepted: 2012-10-09 09:28:30

Agent Originating Computer Network Address: 70.60.110.116

You'll need Skype Credit

# American Home Realty Network, Inc.
# Co-Cooperating Standard Agreement

Form CoOp-1 (rev. 06-11)

Control No.: 201110042053

Executed Date: 10-04-2011

**Originating Broker**

American Home Realty Network, Inc. d/b/a NeighborCity

222 7th Street

2nd Floor

San Francisco, CA 94103

Ph: 1-800-357-3321        1-800-357-3321 FREE

Fax: 1-866-349-7423

Cooperating Broker & Agent:

Brokerage Name: Prudential Carolinas Realty K-ville

Managing Broker Name: Tom Maier

Managing broker Phone: 3369964256

Managing Broker E-mail: Tom.Maier@prucarolinas.com


Recipient Agent:

Recipient Agent Name: Juanita Isbell

Recipient Agent Phone: 3368171758

Recipient Agent E-mail: juanita.isbell@prucarolinas.com

Recipient License #: 158896


    From time to time American Home Realty Network, Inc. ("We" or "Us"), the Originating Broker, will invite Cooperating Broker ("You") to cooperate with Us in the delivery of services to potential real estate buyers, sellers and renters ("Customer") to whom We have procured through our websites and direct contact. Upon Your execution and return of this Agreement we will commence the exchange of necessary information for You to deliver advisory services to our Customers. Your efforts to assist our Customers will be governed by, and subject to, this Co-Cooperating Standard Agreement ("Agreement").

With respect to any Customer, their family member, or any related party (familial or not) introduced as a result of the original referral to the Customer for whom We invite and You agree to provide additional brokerage services, You agree to:

1. Share with Us thirty (30%) percent of all gross commissions ("Referral Fee") due to You for each side of the transaction where You represent the Customer, whether the Customer buys, and/or sells and/or leases/rents any real estate, for a period of twenty-four (24) months following your acceptance of the Customer ("Referral Period");

2. Report and pay to Us a Referral Fee on any and all additional transactions the Customer executes with You within the Referral Period;

3. Provide the Customer any additional disclosure documents required by the state real estate laws to which You are subject that have not already been provided to the Customer by Us, secure the Customer's acknowledgment of receipt of such disclosures, and send Us an electronic copy;

4. Provide Us relevant details of the contract within 2 business days of an agreement of sale (i.e. "contract") being executed;

5. Provide the closing agent (and/or title company, if applicable) with a copy to Us specific written instructions in the form of a Broker Demand for Payment to: (a) divide all commissions we are collectively entitled to receive in accordance with this Agreement; (b) pay the Referral Fee to Us directly out of escrow; (c) send Us a copy of the closing statement;

6. Should You fail to perform your responsibility in Sections 4 & 5, You will pay Us as additional compensation 50% of all sums otherwise due Us plus all costs of collection;

7. Adhere to the reporting and performance standards promulgated by Us from time to time including, among other things, the submission of "Progress Reports" and the reporting of all offers You submit on behalf of the Customer, whether rejected or accepted;

8. Provide Us with written notification if the Recipient Agent ceases to keep their real estate license with You;

9. Provide Us with all the consents, approvals and property information to list the Customer's property on any of our websites;

10. To the extent necessary to fund the commission division stated above, this Agreement constitutes an assignment of any interests in any commission/fees either of us earn from a transaction for a Customer for whom We have agreed to cooperate;

11. We agree that either of Us may directly contact the closing agent to monitor the transaction and direct the division of the commission as provided above;

12. The term of this Agreement commences upon execution by You and shall continue until terminated by either party upon thirty (30) days prior written notice; however, either party may terminate this Agreement immediately upon written notice if the other party (i) is the object of a petition in bankruptcy that is not dismissed within sixty (60) days of filing; (ii) is no longer licensed as an active real estate broker; (iii) is the object of criminal prosecution, a disciplinary proceeding pursuant to the real estate license law under which the party is licensed, or a claim that the party has violated consumer protection laws, equal housing opportunity laws, or engaged in any conduct constituting moral turpitude, (iv) is You and You fail materially to comply with Our reporting and performance standards as referenced in Sections 3 & 4 of this Agreement. Notwithstanding the foregoing, this Agreement shall continue with respect to Customers We and You have agreed to provide cooperating services for the balance of the 24-month period following each acceptance;

13. You represent and warrant to Us that (i) You are and will remain during the term of this Agreement duly licensed as a real estate broker in the state within which you conduct Your business; (ii) You have full power and authority to enter into this Agreement, perform Your duties and obligations under this Agreement, and that Your performance under this Agreement shall not violate or breach any other agreement or duty to which You are subject; (iii) if You are a broker or agent affiliated with a brokerage company, Your execution of this Agreement shall bind that company and You warrant that you have full authority to do so; (iv) You or any brokerage company with which You are affiliated, are not currently the object of any bankruptcy proceeding, disciplinary proceeding before any real estate commission, department or agency, or any criminal proceeding; (v) You or the brokerage company with which You are affiliated, have and will maintain so long as this Agreement is in effect professional liability insurance with aggregate annual liability limits of at least $1,000,000

14. You agree to defend, indemnify and hold Us harmless from any damages, costs, expenses, judgments or attorneys fees and litigation costs or expenses arising from any

allegations asserted by a third party, including a Customer, (a "Claim") that if proven to be true would constitute a breach of your duties, obligations, warranties or representations under this Agreement

15. This is an agreement for the performance of personal services and may not be assigned by either party without the express written consent of the other party, which the other party may withhold in its sole discretion. Notwithstanding the foregoing, this Agreement may be assigned by Us without Your prior consent incident to Our merger with another company, or Our sale of all, or substantially all, of Our assets to another person or entity.

**- End of Text -**
## Proof of Acceptance

By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s). You further release American Home Realty Network, Inc. from any claims related to such use of this information.

**American Home Realty Network, Inc.**
By: Christina Louise Case, Designated Officer (License #01146539)
Date: 2011-10-04 20:53:23

**Cooperating Broker:**
By: Prudential Carolinas Realty K-ville
Name: Tom Maier
Date: 2011-10-04 20:53:23

Time Stamp: 2011-10-04 20:53:23
Originating Computer Network Address: 71.76.148.251

You'll need Skype Credit

**EXHIBIT 2**

**TO**

**DECLARATION OF CHRISTOPHER R. MILLER**

# NEXSEN|PRUET

Robert H. Hull, Jr.
Member
Admitted in NC

March 5, 2013

**Certified Mail – Return Receipt Requested**

American Home Realty Network, Inc.
D/B/A "NeighborCity.com"
Attn: Mr. Christopher R. Miller
Chief Legal Officer and General Counsel
222 7th Street, 2nd Floor
San Francisco, California  94103

> **Re:**   *Infringement of Copyrighted Work of Carolina Multiple Listing Services, Inc.*

Dear Mr. Miller:

Charleston

**Charlotte**

Columbia

Greensboro

Greenville

Hilton Head

Myrtle Beach

Raleigh

    This firm represents Carolina Multiple Listing Services, Inc. ("CarolinaMLS"), with regard to the enforcement of its copyrights in content relating to its real estate listings database.  Certain of CarolinaMLS's copyrighted works are appearing on your company's web site, NEIGHBORCITY.COM (the "Infringing Site"), without authorization from CarolinaMLS.

    By this letter, CarolinaMLS demands that your company, and all persons acting under its direction, control or authority, immediately, cease and desist from copying, reproducing, publicly displaying, publicly distributing and creating derivative works from its copyrighted works and content from its database.

    CarolinaMLS is a Multiple Listing Service company doing business, primarily, in North Carolina and South Carolina.  All CarolinaMLS participants and subscribers are subject to Participant/Subscriber agreements (the "Agreements"), which provide that the participant and/or subscriber have assigned or licensed all copyrighted rights in work appearing in the database to CarolinaMLS.

    The original works of authorship, including photographs and original text (collectively, the "Protected Works") assigned under the Agreements and the copyrights in each and every such work, including advertising copy, is the property of

227 W. Trade Street
Suite 1550
Charlotte, NC  28202
www.nexsenpruet.com

**T** 704.338.5335
**F** 704.805.4704
**E** BHull@nexsenpruet.com
Nexsen Pruet, PLLC
**Attorneys and Counselors at Law**

NPCHLT1:540396.2-LT-(RHH) 036296-00005

Case 1:13-cv-00181-TDS-LPA   Document 15-4   Filed 06/17/13   Page 36 of 40

CarolinaMLS. The Copyright Act of 1976 (17 U.S.C. §101 et seq.) provides that the owner of a copyrighted work has the exclusive right to copy, reproduce or create derivative works from it and to distribute such works.

Each act of copying and distribution of the Protected Works (or any one of them) without authority or license from CarolinaMLS, therefore, constitutes an infringement of the CarolinaMLS's copyrights. As you are very much aware, copyright owners whose works are infringed are entitled to a wide array of remedies, including injunctive relief, money damages and attorney fees and costs.

In light of the foregoing and in order to prevent further action in this matter, you are directed to perform the following steps and provide assurances to me by close of business on March 15, 2013, that they have been completed:

1.      Respond to this letter via e-mail (to bhull@nexsenpruet.com) and provide your source of CarolinaMLS data and attach any agreement which you may claim authorizes the use of CarolinaMLS data on the Infringing Site.

2.      Remove all data relating to CarolinaMLS listings from the Infringing Site.

3.      If you have supplied data relating to CarolinaMLS listings to other web sites, companies or individuals, identify each such recipient and provide contact information for each such recipient to me.

4.      Implement procedures to ensure that no CarolinaMLS listing content appears on any of your sites in the future and that you do not distribute the Protected Works, or any portion of them, to any third party and provide confirmation of such procedures to me.

5.      Return to CarolinaMLS all copies of the Protected Works or any portion of them in your possession, or destroy all such materials and certify, via email to me, that you have done so.

CarolinaMLS would, of course, prefer to protect its intellectual property rights with your voluntary cooperation. You should be aware, however, that CarolinaMLS will not hesitate to use every lawful means at its disposal to protect its rights.

March 5, 2013
Page 3

      Please contact me if you have any questions.  Thank you, in advance, for your cooperation.

                    Very truly yours,

                    NEXSEN PRUET, PLLC

                    Robert H. Hull, Jr.

RHH:lf

Enclosure

NPCHLT1:540396.2-LT-(RHH) 036296-00005

**EXHIBIT 3**

**TO**

**DECLARATION OF CHRISTOPHER R. MILLER**

 

Christopher R. Miller
Chief Legal Officer and General Counsel
American Home Realty Network, Inc.
Phone: (800) 357-3321
222 7th Street, 2nd Floor
San Francisco, CA 94103

March 11, 2013

**<u>VIA EMAIL TO bhull@nexsenpruet.com</u>**
Robert H. Hull, Jr.
Nexsen Pruet
227 W. Trade Street, Suite 250
Charlotte, NC 28202

### *RE: Your Correspondence of March 5, 2013*

Dear Mr. Hull:

I am writing in response to your letter of March 5, 2013 in which, to paraphrase, you represent that CarolinaMLS purports to have ownership rights in certain intellectual property which you claim are being infringed by American Home Realty Network, Inc. ("AHRN"). You have demanded that AHRN "cease and desist" from the alleged infringing activity.

As you are undoubtedly aware, especially given the content of your firm's presentation to CMLS 2012 in Boston, there is a substantial question, presently pending in at least two federal district courts, as to whether those cows have left the barn. With regard to the demands set forth in your letter, I note that you have not identified with any specificity the copyrighted works which you allege are being infringed. Without such specification, it is difficult, if not impossible, for AHRN to assess and respond in a substantive way to your demands.

In order that I may fully evaluate your demands, please provide me with 1. Specific identification of each copyrighted work which you claim has been infringed; 2. The date and manner of the alleged infringement; and 3. Certificates of registration for each work that you claim has been infringed. As soon as I receive that information, I will review it and respond further.

Very truly yours,

*Christopher R. Miller*

Christopher R. Miller
General Counsel, AHRN