# UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PREFERRED CAROLINAS REALTY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 1:13-cv-00181 |
| ) | |
| AMERICAN HOME REALTY NETWORK, ) | |
| INC., D/B/A NEIGHBORCITY.COM, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL WRITTEN DISCOVERY AND 30(b)(6) DEPOSITION

This Memorandum is submitted in support of Defendant American Home Realty Network, Inc.'s ("AHRN's") Motion to Compel Written Discovery and 30(b)(6) Deposition.

## I.    THE ISSUES BEFORE THE COURT

Despite numerous requests by AHRN and a meet and confer, AHRN has been prejudiced by Plaintiff Preferred Carolinas Realty, Inc. ("PCR") refusal to comply with its discovery obligations as follows:

1. **PCR has responded with meritless objections to numerous standard requests for production from AHRN and has also refused to produce documents pursuant to these requests and as required by Rule 34 of the Federal Rules of Civil Procedure.**

2. **In response to AHRN's Deposition Notice, PCR produced a single Rule 30(b)(6) witness, Daniel Washington, who was unprepared and was unable to answer questions on numerous topics.**

### 3. PCR has failed to produce responsive documents identified at Mr. Washington's deposition.

In light of PCR's position, AHRN has no alternative but to request that the Court overrule PCR's meritless objections and compel PCR to produce documents responsive to AHRN's document requests and documents identified by Deponent Washington. AHRN also requests that the Court compel PCR to produce a witness or witnesses with sufficient knowledge to speak to all of the topics listed on AHRN's list of topics included with its Rule 30(b)(6) Deposition Notice to PCR.

Furthermore, as shown below, two highly relevant documents responsive to AHRN's Request for Production No. 2 were identified by Mr. Washington during his deposition. Both documents, an internal procedures manual and a communication to PCR's agents and brokers, relate to the issue of the authority of agents and brokers to enter into referral agreements with AHRN and are within the scope of AHRN's Request No. 2 in light of PCR's answer to Interrogatory No. 8.

## II. FACTUAL BACKGROUND

The parties conferred on a Rule 26(f) report but were unable to agree on several matters, including the case track under L.R. 26.1, so on June 21, 2013, they submitted individual reports (Docs. 16 and 17). PCR requested the standard track and AHRN requested the exceptional track. After a hearing held before Magistrate Judge Auld on June 24, 2013, the Court ordered that (1) the case be placed on the complex case track subject to a discovery cutoff date of January 1, 2014, and (2) the parties should confer and submit a joint supplemental Rule 26(f) Report. On July 1, 2013, the parties

submitted their joint report with a proposed schedule [Doc. 18], which on July 3, 2013, the Court adopted by text order.

On June 25, 2013, prior to the parties' submission of their joint supplemental Rule 26(f) Report, and prior to entry of the proposed schedule, PCR served interrogatories and requests for production and requests for admission on AHRN.

After entry of the scheduling order, Defendant AHRN proceeded with discovery as follows:

4. **On September 25, 2013, AHRN served interrogatories and requests for production (copy attached as Exhibit A) and requests for admission on PCR.**

5. **PCR responded to AHRN's discovery requests on October 28, 2013, with numerous objections to all interrogatories and requests for production (copy attached as Exhibit B) and did not provide a date certain for its production of documents.**

6. **On November 4, the parties agreed on the terms of a Stipulation on the Production of Electronically Stored Information ("ESI Stipulation,") that AHRN had first suggested on July 5;**

7. **PCR filed the ESI Stipulation with the court on November 13, 2013 [Doc. 36].**

8. **Attached to a letter dated November 18, 1013, AHRN sent search terms to Scott Murray on November 19, 2013 for PCR to use in searching its ESI (copy attached as Exhibit C).**

9. **On November 25, 2013, PCR produced its first and only set of documents, copy of covering letter attached as Exhibit D ;**

10. **AHRN began review of these documents while also taking seven depositions, including the Rule 30(b)(6) deposition of PCR;**

11. **On December 5, 2013, AHRN gave PCR counsel informal notice by email of its intent to take a Rule 30(b)(6) deposition (copy attached as Exhibit E), with a request for available dates and a list of topics.**

After PCR counsel responded by proposing a date of Friday December 20, 2013, AHRN served a formal 30(b)(6) deposition notice containing the same list of topics on PCR on December 17, 2013 (copy attached as Exhibit F).

12. At the December 20, 2013 Rule 30(b)(6) deposition of PCR, Plaintiff produced a single witness, Mr. Daniel Washington, its Senior Vice President of Sales Support (copy of certified transcript attached as Exhibit G); however, as explained in more detail below, Mr. Washington was not prepared to testify regarding several matters on AHRN's list of topics,

13. After completing its review of PCR's document production, it appeared to AHRN that no electronically stored documents had been produced. In particular, no emails appeared in the production.

14. PCR counsel Brian Simpson confirmed at the deposition of PCR that Plaintiff had not searched any ESI, and the deponent Daniel Washington confirmed that he had not turned over to counsel any devices which he uses for email. *See* Transcript ("Tr.") at 130:25-133:8.

15. In a meet and confer on December 27, 2013, PCR counsel said that it should have been clear from its responses to AHRN's Request for Production that PCR was not searching any ESI for responsive documents.

16. PCR's counsel said that not only did PCR not produce any ESI, but it also did not search any ESI to determine if it contained any responsive documents.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 37 allows for the filing of a motion to compel discovery responses. Fed. R. Civ. P. 37(a)(3)(B); *see also* Fed. R. Civ. P. 37(a)(1). As this court explained in *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226; 239-240 (M.D.N.C., May 12, 2010):

the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope

4

and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (emphasis added). Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the [governing] standard." Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1)."

*Id.* at 239-240. Under Rule 34, "[a] party may serve on any other party a request within the scope of *Rule 26(b)*: (1) to produce and permit the requesting party or its representative to inspect [and] copy . . . any designated documents or electronically stored information -- including writings . . . and other data or data compilations -- stored in any medium . . . ." *Fed. R. Civ. P. 34(a)*. Rule 34(a)(1)(A) does not distinguish between paper documents or electronically stored information. *John W. Daniel & Co., Inc. v. Durham Pub. Sch. Bd. of Educ.*, 1:07CV61, 2008 WL 2781164 (M.D.N.C. Mar. 7, 2008). *See also Butler v. Kmart Corp.*, 2007 U.S. Dist. LEXIS 61141 (N.D. Miss. Aug. 20, 2007) (Defendant's failure to describe efforts to search for electronically stored information led the court to order a thorough search by defendant of its computer systems).

## IV.  ARGUMENT

### A.  PCR Failed to Produce Documents Pursuant to AHRN's Timely Requests For Production of Documents

AHRN moves to compel production of documents responsive to the following Requests for Production:

### <u>Request No. 2</u>

AHRN's Request for Production No. 2 requests: "Any and all documents that

5

support, refer to, relate to, or evidence any of the facts identified by you in your responses to AHRN's Interrogatories served concurrently herewith."  PCR objected to Request No. 2 as "overly broad, unreasonably burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  PCR also objected on work-product grounds; as an "improper request"; and as vague, ambiguous, and insufficiently particular.

AHRN requests information that supports the answers that PCR gave in its interrogatories.  This is not an unreasonable request, and in fact some states have made this a standard interrogatory.  For example, South Carolina, by rule, has a standard interrogatory request, "Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case."  South Carolina Rule of Civil Procedure 33(b)(2).

If this request would lead to the production of work-product, then PCR has the burden to produce a privilege log after conducting a search of its documents, including ESI, pursuant to the ESI Stipulation.

### Request No. 7

Request No. 7 states: "Copies of all of PCR's End User License Agreements with any MLS entity, including but not limited to the End User License by which PCR allegedly licenses its copyrights in the photographs to Carolina MLS as mentioned in the Howard Declaration [Doc. 19-3] at Paragraph 7."

PCR objected to this as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

6

agreements unrelated to the photographs identified in the Complaint.  PCR produced only its agreement with Carolina MLS, and refused to produce any other agreements.  These other agreements are reasonably calculated to lead to the discovery of admissible evidence because PCR's license to Carolina MLS is directly relevant to the issue of whether PCR owns copyright in the photographs.  These agreements also are important evidence of Plaintiff's intent to maintain a monopoly with various multiple listing services and exclude competition.

### Request No. 11

Request No. 11 states: "Any and all documents that you contend support any of your claims against AHRN or are relevant to any of AHRN's defenses as set forth in its Answer."  PCR objected on numerous grounds and did not produce any responsive documents to this request.  Again, this is a standard request for production used in many cases, and PCR must respond to this request.

### Requests No. 12, 13, and 14

Request No. 12 states: "Any and all documents comprising or relating to your communications with NAR regarding PCR's copyrights or this lawsuit."  Request No. 13 asks for: "Any and all documents comprising or relating to your communications with American Home Services of America, Inc., regarding PCR's copyrights and/or this lawsuit."  And, Request No. 14 seeks: "Any and all documents comprising or relating to your communications with third parties regarding PCR's copyrights or this lawsuit."

PCR objected to Request Nos. 12, 13, and 14 by refusing to produce any documents responsive to the requests. PCR claims the requests are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Further, PCR objects to these requests as vague, ambiguous and insufficiently particular. Finally, PCR objects to these requests to the extent they seek documents protected by the attorney-client privilege and the work-product doctrine.

Request Nos.12, 13, and 14 are highly relevant to AHRN's defense of copyright misuse. One tenet of the copyright misuse defense is the antitrust component. The Fourth Circuit has described the copyright misuse defense in *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990) (internal citations omitted):

> The grant to the [author] of the special privilege of a [copyright] carries out a public policy adopted by the Constitution and laws of the United States, "to promote the Progress of Science and useful Arts, by securing for limited Times to [Authors] ... the exclusive Right ..." to their ["original" works]. United States Constitution, Art. I, § 8, cl. 8, [17 U.S.C.A. § 102]. But the public policy which includes [original works] within the granted monopoly excludes from it all that is not embraced in the [original expression]. It equally forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant.

*Id.* at 977. The *Lasercomb* court further explains "So while it is true that the attempted use of a copyright to violate antitrust law probably would give rise to a misuse of copyright defense, the converse is not necessarily true—a misuse need not be a violation of antitrust law in order to comprise an equitable defense to an infringement action." *Id.* at 978.

First, "as with relevance objections, merely stating that a discovery request is 'overbroad' or 'unduly burdensome' will not suffice to state a proper objection." *Mancia*

*v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 364 (D. Md. 2008). PCR's unsupported

objections are precisely what the *Mancia* court defined as insufficient. Furthermore,

PCR's boilerplate objections, combined with its refusal to produce any documents, and

exacerbated by its apparent refusal to search its ESI for responsive documents, make it

clear that PCR's intent is not to expose the facts and illuminate the issues, but rather to

game the Rules to obtain a tactical advantage.

> "[T]he spirit of the [R]ules is violated when advocates attempt to use
> discovery tools as tactical weapons rather than to expose the facts and
> illuminate the issues . . . ." *Fed. R. Civ. P. 26* advisory committee's notes,
> 1983 Amendment. See also *Mills, 259 F.R.D. at 130* ("The civil discovery
> process is to be engaged in cooperatively."); *Wagner v. St. Paul Fire &
> Marine Ins. Co., 238 F.R.D. 418, 422 (N.D.W. Va. 2006)* ("Gamesmanship
> to evade answering [discovery requests] is not allowed.").

*Kinetic Concepts*, at 242.

Furthermore, "generalized, boilerplate objections 'are highly disfavored in the

Fourth Circuit.'" *Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, 2013 U.S. Dist. LEXIS

96690, 5-6 (W.D. Va. July 11, 2013) (quoting *Paulino v. Dollar Gen. Corp.*, 3:12-CV-75,

2013 U.S. Dist. LEXIS 59371 (N.D. W.Va. Apr. 25, 2013)); *see also Cappetta v. GC

Servs. Ltd. P'ship*, 2008 U.S. Dist. LEXIS 103902, 2008 WL 537934 at *3 (E.D. Va.

2008) (general objections "are not useful to the court ruling on a discovery motion" and

"failure to make specific legitimate objections to particular interrogatories or requests for

production within the time allowed may result in a court deeming any objections

waived"); *Barb v. Brown's Buick, Inc*., 2010 U.S. Dist. LEXIS 8655, 2010 WL 446638 at

*1 (E.D. Va. 2010) (striking boilerplate "general objections" as well as "specific

objections" that were just as vague and designed to obfuscate); *Hager v. Graham*, 267

F.R.D. 486, 492 (N.D.W.V. 2010) ("General objections to discovery, without more, do not satisfy the burden of the responding party under the Federal Rules of Civil Procedure to justify objections to discovery because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); *Mills v. East Gulf Coast Prep. Co ., LLC*, 259 F.R.D. 118, 132 (S.D.W.V. 2009) ("[B]oilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Frontier—Kemper Const., Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 530—31 (S.D.W.V. 2007) (finding that boilerplate objections to defendant's requests for production of documents, which indicated simply that requests were overbroad, unduly burdensome, and not reasonably calculated to lead to discovery of admissible evidence, did not comply with the rule, which required specific objections).

Putting aside PCR's failure to object specifically, PCR makes no attempt whatsoever to demonstrate that the requests would indeed impose undue burden on PCR. And PCR cannot make such a showing because PCR failed to conduct even one search of its ESI based on the provided search terms that would have revealed the magnitude of the "burden" it faces.

Similarly, Plaintiff's objection to producing communications about this lawsuit with the National Association of Realtors ("NAR") (Request No. 12), AHRN (Request No. 13), and other third parties (Request No. 14) is unfounded. Defendant has alleged that the Plaintiff in this case, PCR, has been engaged in a planned, coordinated, and illegal attempt to misuse copyrights on photographs to prevent competition in violation of the Clayton Act and public policy. Communications between other entities and PCR –

10

some of which have a vested interest in maintaining a monopoly and preventing competition by AHRN and others – is relevant to AHRN's defense of copyright misuse. *See* AHRN's Answer [Doc. 11] at Eleventh Defense (copyright misuse); AHRN's Opposition to PCR's Motion for Partial Summary Judgment [Doc. 15] at 18-19. AHRN has been sued in federal court in three different states by entities that it has reason to believe are coordinating with each other to pursue a strategy to bankrupt, intimidate, and terminate Defendant's business by misusing copyrights.

In the parties' meet and confer on December 27, 2013, PCR argued that asking PCR for communication relating to its copyrights with other entities was overbroad. Plaintiff admitted, however, that it has done no search or inquiry to determine how many documents may be responsive to this request and therefore has no rational basis for its objection that this request is overly burdensome. At its crux, this case is about copyrights. It is completely natural and should be expected that AHRN would seek communications from the Plaintiff about copyrights. To make matters worse, as part of PCR's own requests to AHRN, PCR asked AHRN to search its ESI for the term "copyright" – a search that Plaintiff has deemed "overbroad" when it pertains to its own documents. This objection should not be allowed to stand. PCR should be compelled to immediately search for and produce responsive documents.

Further, PCR revealed in the meet and confer that it did not search its records and its counsel did not have any conversations with data custodians of PCR to determine if the production would indeed be overly burdensome. Therefore, it is impossible for a reasonable person to understand how PCR can argue that producing communications

11

relating to information relating to copyrights would be either too burdensome or not relevant to this suit.

AHRN reasonably suspects that the vast majority of the communications it requests in Request Nos. 12, 13, and 14 consists of emails or attachments to emails. Identification and production of such communications would absolutely require a search of PCR's ESI, as contemplated by the parties' ESI Stipulation, filed with the Court on November 13, 2013. This Court should immediately compel PCR to search its electronically stored information and show that it has properly preserved this information since the beginning of this case.

**B. Plaintiff Failed to Produce a Corporate Representative With Sufficient Knowledge of the Topics Set Forth in AHRN's Schedule A to Its 30(b)(6) Deposition Notice to PCR and Failed to Produce Responsive Documents Identified at the Deposition**

PCR produced Daniel Washington, the Senior Vice President of Sales Support for PCR, to testify at the corporate deposition of PCR. By doing so, PCR represented that Mr. Washington had sufficient knowledge to speak to the topics listed on Exhibit A to AHRN's Notice of Deposition (Exhibit D). Although Mr. Washington stated he was prepared to testify as to all topics, *see* Tr. 6-7, he was unprepared and unable to respond to questions related to (1) the "work for hire" agreements of PCR's agents Mary Lib Richards and Jill Flink; (2) to the two declarations of PCR's President and CEO Thomas Camp; and (3) the authorship of the photographs in the property listing for 126 Bear Oak Drive, Smithfield, NC (Exhibit B to Complaint) and PCR's Supplementary Registration for copyrights to the photographs in that listing, as shown below. As explained in more

12

detail below, AHRN has challenged the "work for hire" agreements as invalid assignments and the copyright registrations based thereon as also invalid. The validity of these agreements affects PCR's claim of ownership of the copyrights and their registrations affect PCR's ability to bring a lawsuit to enforce its copyrights and thus these issues are highly relevant to PCR's copyright infringement claims. Moreover, Mr. Camp's declarations raise the issue of whether PCR agents and brokers had authority to enter into referral agreements with AHRN for PCR and such referral agreements AHRN has alleged are a defense to PCR's copyright infringement claims. Thus the authority of PCR agents and brokers to execute such agreements binding PCR is a highly relevant issue in this case.

Various courts have held that producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear. As the Fifth Circuit has stated:

> Rule 30(b)(6) streamlines the discovery process. It places the burden of identifying responsive witnesses for a corporation on the corporation. Obviously, this presents a potential for abuse which is not extant where the party noticing the deposition specifies the deponent. When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Resolution Trust Co. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). *See also Universal Furniture Intern. v. Collezione Europa*, 599 F.Supp.2d 648, 660 (M.D.N.C., 2009) *citing United States v. Taylor,* 166 F.R.D. 356, 363 (M.D.N.C.1996) (noting that "[p]roducing an unprepared witness [for the deposition of a corporation] is

13

tantamount to failure to appear," warranting imposition of sanctions (*citing* Fed. R.Civ.P.

37(2))).


### 17. Mr. Washington lacks knowledge regarding the alleged "not work for hire" determination made by PCR with respect to the Jill Flink and Mary Lib Richards agreements.

PCR alleges that the photographs in the property listings shown in Exhibits A, G, H and I to the Complaint were taken by independent contractor agents Jill Flink (Exhibit A) and Mary Lib Richards (Exhibits G, H and I). PCR has placed in the record a Photography Services Agreement ("PSA") [Doc. 10-17] signed by Agent Flink and an independent contractor agreement ("ICA") [Doc. 10-9] signed by Agent Richards. Each agreement states that the photographs taken by the agent are "works made for hire" and on that basis are the property of PCR. However, the agreements also provide that if the photographs are ever determined to not be "works made for hire," the agent agrees to assign the copyrights to PCR. When PCR registered the copyrights in the four groups of photographs, it did so based on a written assignment agreement, *see* Complaint Exhibits A-2, G-2, H-2 and I-2, and not based on works made for hire.

AHRN's Interrogatories Nos. 13 and 14 ask PCR whether the photographs referred to in the ICA and PSA, respectively, have ever been determined not to be "works made for hire," and if so, to provide details. In PCR's answers to each, it stated that "Preferred Carolinas has determined that the photographs at issue in this case [covered by each agreement] do not currently qualify as 'works made for hire' under 17 U.S.C. § 101." *See*

14

PCR's Answers, Exhibit A. Mr. Washington verified these answers indicating that "the answers are true to the best of my belief based upon my personal knowledge, the information I reviewed, and information relayed to me by other Preferred Carolinas Realty, Inc. representatives." PCR's Answers, Verification (Exhibit B). When Mr. Washington was asked who made the determination that the Flink and Richards photographs were not works made for hire , he said he "was not sure" and that he didn't prepare this document [the interrogatory answers]." Tr. 87. He also indicated that whether such a determination had been made "was "not a part of any discussion" he had. Tr. 85.

When Mr. Washington was asked who within PCR made the determination regarding a "work made for hire", PCR's counsel instructed the witness not to answer to the extent it would require him to divulge attorney-client privileged information, Tr. 87-88, and the witness refused to answer. This was an inappropriate objection and refusal to answer because PCR did not raise any objection to AHRN's Interrogatories 13 and 14 which requested PCR to describe in detail all facts related to the determination. Elsewhere in the deposition Mr. Washington indicated he signed the verification as to the work made for hire determination because "I read what our attorneys put on there … and if that's what their position is, I agreed with it." Tr. 111. Also in response to several questions, Mr. Washington admitted that he did not know what was meant by "work made for hire," Tr. 81, 83-84, and that the copyright registration applications were filed for PCR by Lisa McDowell who spoke with the U.S. Copyright Office about how to file the applications for registration, directed how the applications were to be filed, and they

15

were filed accordingly.  Tr. 110.  Mr. Washington did not know how the applications were filed, when Ms. McDowell's conversation with the Copyright Office occurred, or even when PCR started filing applications for registration of copyrights.  Tr. 46-47.  *See also* Tr. 100, 110.  At that point, because these issues are central to the lawsuit, AHRN's counsel requested a deposition of Lisa McDowell as a corporate representative knowledgeable about how and why the copyrights registrations, including those for the Flink and Richards photographs, were filed as they were but PCR's counsel refused.  Tr. 111-12.

PCR should be required to provide a witness such as Lisa McDowell, who is knowledgeable on the above matters.

### 18. Mr. Washington also lacked knowledge of the matters set forth in Thomas Camp's declarations.

Mr. Washington was also not prepared to testify about Thomas Camp's two declarations [Doc. 19-1 and Doc. 25-2] (Topic 10).  These declarations were filed by PCR as exhibits to its Reply in support of its Motion for Partial Summary Judgment [Doc. 19] and its Opposition to AHRN's Motion to Strike PCR's Reply [Doc. 25] and contain statements that go to the heart of this lawsuit, namely that PCR agents lacked authority to enter into referral agreements with AHRN and on that basis such agreements may be rescinded.  Despite this, Mr. Washington had not even bothered to speak to Mr. Camp as part of his preparation for the deposition.  Tr. 123.

In addition, Mr. Washington was not able to answer questions about Mr. Camp's April 4, 2012 letter rescinding or terminating referral agreements between PCR and

AHRN [Doc. 19-2]. Mr. Washington said initially that he did not know whether the language of the letter was Mr. Camp's own, although Mr. Washington stated that he personally did not contribute to it. Tr. 34. Only after being shown letters from the CEOs of PCR's sister companies containing virtually identical language to that in Mr. Camp's letter, Mr. Washington admitted that Mr. Camp did not draft his own letter but rather that it was drafted by counsel. Tr. 119-121.

In regard to the substance of the April 4, 2012 Camp letter, Mr. Washington said he understood the language in Mr. Camp's letter to mean that the referral agreements with AHRN were invalid because the agents or brokers signing them were independent contractors who could not bind the company. Tr. 133-34. However when asked about PCR policy as to who can sign contracts for the company, he referred to an internal procedures manual but was unsure whether the manual addressed the issue. Tr. 94-95. At that time, AHRN counsel requested that this manual be produced, but so far PCR has not produced this document. Elsewhere in his deposition, Mr. Washington stated that about the same time as Mr. Camp's April 4, 2012 letter, PCR sent a communication to agents regarding their lack of authority to enter into referral agreements. Tr. 134-35. AHRN counsel requested that this communication also be produced – so far it has not been. Both documents fall clearly within Request for Production No. 2 (documents that support, refer to, relate to, or evidence any of the facts identified in PCR's responses to AHRN's Interrogatories). In fact, in its answer to Interrogatory No. 8, PCR stated that "Preferred Carolinas did not authorize any of its agents or brokers to enter into any agreements with AHRN on Preferred Carolinas' behalf." Thus the procedures manual

17

and the communications are highly relevant, and AHRN respectfully requests that the Court compel their production.

Further, Mr. Washington could not say whether Mr. Camp had any communications with the brokers and agents of PCR who signed referral agreements with AHRN. Tr. 136.

At Mr. Washington's deposition AHRN counsel requested that PCR continue the deposition with Mr. Camp as a witness, but counsel for PCR refused. Tr. 137-38. PCR has blatantly failed to produce an adequate witness for its 30(b)(6) deposition and should be compelled to do so as soon as possible.

### 19. Mr. Washington Also Lacked Knowledge of the Authorship of the Photographs Appearing in the Property Listing at 126 Bear Oak Drive, Smithfield, NC PCR's Supplemental Copyright Registration Filed for Those Photographs Was Not Made Available to AHRN Counsel So He Could Question Mr. Washington About It

When Mr. Washington was asked about the photographs in the property listing at 126 Bear Oak Drive (Exhibit B to Complaint), he lacked the knowledge to testify as to the authorship of the photographs. Tr. 96-99. He could not recall whether he had seen PCR counsel's letter stating that Amanda Carroll took only 8 of the photographs in the listing but said he "knew [counsel] had sent a letter," and he was "aware of the situation." However, PCR counsel's letter (Exhibit H) attributes revised authorship for only 19 of the 20 photographs, and Mr. Washington was unable to identify the author of the remaining photograph. Tr. 99. While Mr. Washington stated that counsel's letter "says we will prepare and correct the documents to submit in court," he initially seemed unaware that on December 17, 2013, three days before his deposition PCR had mailed to

18

the Copyright Office a supplemental copyright registration (copy attached as Exhibit I). Tr. 98. He later stated, after referring to PCR counsel's letter, that a supplemental registration had been filed. Tr. 105. This supplemental registration purporting to correct the authorship of the photographs in the prior registration was not made available to AHRN until after the parties' meet and confer on Friday December 27, 2013, so AHRN counsel was unable to question Mr. Washington about it.

AHRN should be afforded an opportunity to examine a corporate representative with knowledge of the authorship of the photographs in the 126 Bear Oak property listing and PCR's supplemental copyright registration as submitted to the Copyright Office. As these topics of inquiry relate at least to topics 1, 2, 7 and 9 on Exhibit A to AHRN's deposition notice.

## V. CONCLUSION

PCR brought this lawsuit – which threatens the existence of AHRN's business – and AHRN undoubtedly has a right to discovery on its defenses. Therefore, AHRN asks that this Court compel the requested discovery from PCR.

Dated:  December 31, 2013

/s/ *Larry McDevitt*
Larry McDevitt
N.C. State Bar No. 5032
David Wilkerson
N.C. State Bar No. 35742
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
E-mail: lmcdevitt@vwlawfirm.com
E-mail: dwilkerson@vwlawfirm.com

COUNSEL FOR PLAINTIFF AHRN, INC.

FARKAS+TOIKKA, LLP
*/s/ Richard S. Toikka*
Richard S. Toikka (special appearance)
L. Peter Farkas
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 31, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bryan T. Simpson
Teague, Campbell, Dennis & Gorham, LLP
P.O. Box 19207
Raleigh, NC 27619-9207
bsimpson@tcdg.com

Robert D. MacGill
robert.macgill@btlaw.com
Scott E. Murray
smurray@btlaw.com
Barnes & Thornburg LLP
11 S. Meridan Street
Indianapolis, IN 46204
Attorneys for Plaintiff

/s/Larry McDevitt
Larry McDevitt