# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PREFERRED CAROLINAS REALTY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action 1:13-cv-00181-TDS-LPA |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN HOME REALTY NETWORK, | ) | |
| INC., D/B/A NEIGHBORCITY.COM, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PREFERRED CAROLINAS' RESPONSE TO AHRN'S MOTION TO COMPEL

Just one day before discovery closed, AHRN filed this motion to compel Preferred Carolinas to conduct expansive searches of its electronic documents. Not only are AHRN's complaints about Preferred Carolinas' production unfounded, they are also untimely. Preferred Carolinas disclosed the scope of its production months ago, and AHRN did not object. Believing that document discovery was complete, Preferred Carolinas proceeded with depositions and mediation, and it is preparing to file its summary-judgment motion by the January 31 deadline.

Yet now, AHRN asks the Court to reopen discovery by ordering Preferred Carolinas to search for additional documents. AHRN's decision to wait until the close of discovery to file its motion appears to be a tactical move designed to extend the discovery period. The Court should not condone AHRN's conduct, and it should deny AHRN's motion as untimely.

Moreover, even if the Court were to consider it on the merits, AHRN's motion would fail. The document requests at issue did not comply with the requirements of Rule 34—they did not describe with "reasonable particularity" the documents being requested, and they sought documents wholly unrelated to any issue in the case. Preferred Carolinas properly objected to them long ago, and these objections should be sustained.

AHRN's complaints about Preferred Carolinas' 30(b)(6) witness are similarly deficient

*First*, AHRN did not properly meet and confer on this issue. AHRN's only request prior to filing its motion was that Preferred Carolinas agree to produce two specific people—Thomas Camp and Lisa McDowell—for depositions, even though AHRN had already taken the maximum seven depositions allowed under the Case Management Plan. Preferred Carolinas properly refused this request. AHRN's motion to compel is different—it now asks the Court to compel Preferred Carolinas to designate a new 30(b)(6) witness to testify on certain topics. AHRN did not meet and confer on this request, and it should be denied.

*Second*, AHRN has not identified any specific questions properly within its 30(b)(6) notice that Preferred Carolinas' designee was unable to answer. Had AHRN done so, Preferred Carolinas would have sought and provided the requested information. It is not uncommon for a 30(b)(6) witness to be unable to answer a specific question at a deposition, and, when this happens, the parties generally work together to get the answer. But here, AHRN made no such effort. Preferred Carolinas prepared its designee on all properly noticed topics, and any information within the notice that he was unable to provide at the deposition has been provided through his subsequent errata sheet. AHRN's motion to compel production of a second designee is yet another attempt to reopen discovery. The Court should deny AHRN's request.

## I.     ARGUMENT

### A.     AHRN's motion to compel production of documents is untimely.

AHRN has known about all the issues underlying its motion to compel the production of additional documents since October 28, 2013. On that date, Preferred Carolinas served its written discovery responses, which specified exactly what Preferred Carolinas was and was not going to produce. Nonetheless, AHRN waited until the last moment to object to the responses, filing this

motion to compel on December 31, 2013—the last business day before discovery closed. Nothing justifies AHRN's delay.

Numerous courts have denied as untimely motions to compel filed at or shortly before the close of discovery.[1] As these cases explain, the court "enjoy[s] extremely broad discretion in controlling discovery." *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. at 336. The Federal Rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Allowing a party to wait until the last day of discovery to file a motion to compel conflicts with this directive—particularly when the movant failed to diligently pursue discovery, previously knew about the disputed issues, and failed to seek court intervention in a timely manner. Granting such a motion would render meaningless the discovery cutoff imposed by the Case Management Plan. As one court observed:

> If…this Court ordered BISM to answer the disputed interrogatory and produce additional documents, discovery would effectively be re-opened. BISM would have to search for, sort through, and produce numerous documents to properly respond to Defendant's interrogatory and document requests....
>
>    …The entire purpose of scheduling orders is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies….These deadlines allow parties to estimate the costs that will be incurred as they move towards trial, and to make informed decisions on strategic motions and settlement negotiations. As such, this Court will not allow Defendant's

---

[1] *See, e.g., Gerawan Farming, Inc. v. Rehrig Pac. Co.,* 2013 U.S. Dist. LEXIS 17507, *14-17 (E.D. Cal. Feb. 8, 2013) (denying as untimely a motion to compel noticed for hearing on last day of discovery); *Meds. Co., LLC v. Mylan Inc.,* 2013 U.S. Dist. LEXIS 3517, *8 (N.D. Ill. Jan. 9, 2013) (denying as untimely a motion to compel filed four days before close of discovery); *Hyland v. HomeServices of Am., Inc.,* 2012 U.S. Dist. LEXIS 67028, *21-22 (W.D. Ky. May 14, 2012) (denying as untimely a motion to compel filed ten days before close of discovery); *Haviland v. Catholic Health Initiatives – Iowa, Corp.,* 692 F. Supp. 2d 1040, 1043-45 (S.D. Iowa 2010) (denying as untimely motions to compel filed 11 days before close of discovery); *Everett v. Aldi, Inc.,* 2009 U.S. Dist. LEXIS 28877, *11 (N.D. Ind. Apr. 6, 2009) (denying as untimely motion to compel filed on last day of discovery); *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 331, 341 (N.D. Ill. 2005) (denying as untimely motions to compel filed on last day of discovery); *Ridge Chrysler Jeep, L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C.,* 2004 U.S. Dist. LEXIS 26861, *18-21 (N.D. Ill. Dec. 29, 2004) (denying as untimely motion to compel filed four days prior to close of discovery).

> disregard for the Local Rules and Scheduling Order to delay this
> case or to compel BISM to incur additional costs.

*Blind Indus. & Servs. of Md. v. Route 40 Paintball Park*, 2012 U.S. Dist. LEXIS 138276, *5-8

(D. Md. Sept. 26, 2012).[2]

      Here, the Case Management Plan approved by the Court required all discovery to be

<u>completed</u> by January 1, 2014. (Dkt. No. 18 at 2.) Under Local Rule 26.1(c), this meant that

"adequate provisions [had to] be made…for documents to be produced…within the discovery

period." "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to

ensure prompt and orderly litigation." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d

843, 851 (7th Cir. 2002). Indeed, "[a] cynic might think that [filing a motion to compel on the

last day of the discovery period] was a calculated decision designed to effect another extension

of the discovery deadline." *Everett v. Aldi, Inc.*, 2009 U.S. Dist. LEXIS 28877, 9-11 (N.D. Ind.

Apr. 6, 2009) (quoting *In re Sulfuric Acid Antitrust Litig.*, 230 F.R.D. 527, 535 (N.D. Ill. 2005))

(alternations in original).

      AHRN's conduct raises the same concerns identified by the *Everett* court—it appears that

AHRN's litigation strategy was designed to extend the discovery deadline and delay the case:

- Preferred Carolinas filed its Complaint on March 4, 2013 (Dkt. No. 1);

- On May 13, 2013, Preferred Carolinas filed its motion for partial summary judgment, which remains pending (Dkt. No. 9);

- On June 17, 2013, AHRN filed its summary-judgment opposition, asking the Court to defer ruling while AHRN took discovery (Dkt. No. 15);

- AHRN then waited until September 25, 2013—a full 99 days—to serve the discovery it claimed was required to oppose Preferred Carolinas' summary-judgment motion (Murray Aff. ¶ 6);

---

[2] Maryland has a local rule requiring motions to compel to be filed within 30 days of receiving the disputed discovery responses. Although this District has no similar local rule, the court's rationale regarding the discovery cutoff date applies equally here.

- On October 28, 2013, Preferred Carolinas timely served its responses and objections to AHRN's written discovery—those responses described in detail which documents Preferred Carolinas was agreeing to produce, and which requests were objectionable (Murray Aff. ¶ 7);[3]

- In November and early December 2013, the parties exchanged multiple letters and e-mails and participated in multiple telephone conferences about discovery issues. During these exchanges, AHRN never objected to Preferred Carolinas' description in its written discovery responses of the scope of its document search or production (Murray Aff. ¶ 8);[4]

- On November 25, 2013, Preferred Carolinas served AHRN with its custodian and data location log, again specifying the documents Preferred Carolinas had collected and produced (Murray Aff. ¶ 9);

- Because AHRN's document requests did not require any general electronic searches, Preferred Carolinas' custodian log did not identify any email locations; if it had, under the ESI Stipulation, AHRN would have responded by selecting the custodians to search and the parties would have agreed to electronic search terms. But because an electronic search was not required, AHRN did not select any custodians, and the parties did not negotiate search terms (Murray Aff. ¶ 9);

- During a call prior to November 27, 2013, Preferred Carolinas' counsel discussed the scope of Preferred Carolinas' document search and production with AHRN's counsel and reiterated that, based on its objections, no general electronic search of Preferred Carolinas' electronic documents was required. AHRN's counsel did not object (Murray Aff. ¶ 10);

- On November 27, 2013, the parties appeared before the Court in connection with Preferred Carolinas' motion to compel AHRN to produce documents. On the day before the hearing, AHRN finally produced more than 200,000 documents in response to discovery requests Preferred Carolinas served on June 20, 2013. AHRN again did not raise any issues about the scope of Preferred Carolinas' document search or production (Murray Aff. ¶ 11);

- In December 2013, the parties participated in an unsuccessful mediation and took 9 depositions in December, completing their depositions on December 20, 2013 (Murray Aff. ¶ 12);

---

[3] For example, compare the response to Request No. 3 (stating that Preferred Carolinas would produce "any agreements with Triangle MLS and Carolinas MLS relating to the photographs at issue in the Complaint) to response to Request No. 2 (asserting objections without identifying any documents that would be produced).

[4] On November 18, 2013, AHRN's counsel sent a letter requesting Preferred Carolinas' custodian and data location log. In that letter, AHRN offered to allow Preferred Carolinas' to bypass producing such a log if it instead agreed to use the enclosed search terms to search all locations responsibly expected to contain responsive documents. (Dkt. No. 43-3.) Preferred Carolinas did not accept this offer but instead produced the requested log on November 25, 2013.

5

- On December 15, AHRN sent a letter responding to Preferred Carolinas' custodian log and, despite Preferred Carolinas' written discovery responses and multiple communications regarding the scope of its document search and production, asked Preferred Carolinas to demonstrate that it had conducted an electronic search (Murray Aff. ¶ 13);

- On December 31—the day before discovery closed—AHRN filed the current motion to compel, complaining about the objections Preferred Carolinas had served more than two months earlier. (Dkt. No. 42.)

- The dispositive motion deadline is January 31, 2014.

Nothing justifies AHRN's delay in filing its motion. During the first half of the discovery period (until September 25, 2013), AHRN did not take *any* discovery, even though it claimed that discovery was needed to decide Preferred Carolinas' May 13, 2013 partial summary-judgment motion. After AHRN finally served discovery and Preferred Carolinas' served its responses and objections, AHRN *again did nothing* for almost two more months. Then, on the last business day of discovery, AHRN filed its motion to compel effectively asking this Court to extend the discovery deadline.

This is not how civil litigation is supposed to work: "Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinkmanship." *Haviland,* 692 F. Supp. 2d at 1044. "Parties should not be rewarded for the kind of purposeful delay exemplified by [AHRN] in this case." *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. at 337. Granting this motion "would result in 'protracted discovery, the bane of modern litigation.' *Roseetto v. Pabst Brewing Co.* 217 F.3d 539, 542 (7th Cir. 2000)(Posner, J.). And the Court should "not allow [AHRN] to, in effect, extend the discovery period through the artifice of filing a motion to compel on the eve of the close of discovery." *Everett,* 2009 U.S. Dist. LEXIS 28877, at *11.

The Court should deny AHRN's motion to compel the production of documents as untimely.

**B.     Even if AHRN's motion had been timely, Preferred Carolinas' objections were proper, and the Court should sustain them.**

AHRN objects to six of Preferred Carolinas' discovery responses. None of AHRN's objections has merit.

**1.     Requests No. 2 and 11 were insufficiently particular and overly broad.**

Rule 34 requires that all document requests describe the requested documents with "reasonable particularity." Fed. R. Civ. P. 34(b). The rule requires the requesting party to provide sufficient information to enable the responding party to know what is and is not covered by the request:

> Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.

*Reinsdorf v. Skechers U.S.A., Inc.*, 2013 U.S. Dist. LEXIS 107631, *29-30 (C.D. Cal. July 19, 2013) (citing *Dauska v. Green Bay Packaging, Inc.*, 291 F.R.D. 251 (E.D. Wis. May 14, 2013)). "[A] document request is not reasonably particular if it merely requests documents 'related to a claim or defense' in the litigation." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (citing *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)).

Document Requests 2 and 11 fail this particularity requirement. Request No. 2 asks for "[a]ny and all documents that support, refer to, relate to, or evidence any of the facts identified by you in your responses to AHRN's Interrogatories…." (Dkt. No. 43-2 at 13.) Request No. 11 asks for "[a]ny and all documents that you contend support any of your claims against AHRN or are relevant to any of AHRN's defenses as set forth in its Answer." (Dkt. No. 43-2 at 18.)

7

Neither request specifies particular documents; both requests would require Preferred Carolinas to move through "mental gymnastics" and "guess" as to what documents are and are not covered. *Reinsdorf*, 2013 U.S. Dist. LEXIS 107631 at *29-30.

Consider this example: One of the "facts" in Preferred Carolinas' interrogatory answers is that it operates under several assumed names. (Dkt. No. 43-2 at 10.) Request No. 2 asks for all documents supporting, referring to, relating to, or evidencing this "fact." AHRN cannot really be asking for every document in Preferred Carolinas' possession showing that it operates under these assumed names. Does AHRN want Preferred Carolinas to produce all its emails containing an assumed name?

Consider another example: Another "fact" Preferred Carolinas identifies in its interrogatory answers is that Sherri Higgins has been an employee of Preferred Carolinas and its predecessor company since 1997. (Dkt. No. 43-2 at 4.) Does Request No. 2 require Preferred Carolinas to produce every document supporting, referring to, relating to or evidencing this fact? Is AHRN asking Preferred Carolinas to produce every pay stub for Ms. Higgins since 1997? Does AHRN want every e-mail communication in which she represents herself as an employee?

Preferred Carolinas could give many more examples, but these two show why Request No. 2 is insufficiently particular. They also support Preferred Carolinas' objection that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Read literally, these requests would encompass many documents that have nothing to do with the copyright claims at issue.

Request 11 is also deficient. It requests all documents supporting Preferred Carolinas' claims or that are relevant to AHRN's defenses. But this request falls squarely within the proscription against requests that merely seek "documents 'related to a claim or defense' in the

litigation." *Kidwiler*, 192 F.R.D. at 202. The request does not identify any specific documents, and Preferred Carolinas would have to guess at what is sought.

The Court should deny AHRN's motion to compel on Requests No. 2 and 11.

### 2. Request No. 7 is overly broad because it seeks documents unrelated to the copyright claims at issue.

Preferred Carolinas' complaint seeks damages for copyright infringement with respect to nine properties listed on two identified MLSs. (Dkt. No. 1.) But Request No. 7 asks for "[c]opies of all of [Preferred Carolinas'] End User License Agreements with any MLS entity, including but not limited to the End User License by which [Preferred Carolinas] allegedly licenses its copyrights in the photographs to Carolina MLS as mentioned in the Howard Declaration at Paragraph 7." (Dkt. No. 43-2 at 16 (emphasis added).) These other MLSs have nothing to do with this case.

In response to Request No. 7, Preferred Carolinas stated that it would produce its End User License Agreement with Carolina MLS, which applies to a subset of the listings at issue in Preferred Carolinas' Complaint. No other End User License Agreement governs the nine listings identified in the Complaint, and Preferred Carolinas' appropriately objected to the remainder of AHRN's request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence "to the extent it seeks agreements unrelated to the photographs identified in the Complaint." (Dkt. No. 43-2 at 16.)

AHRN's motion gives the Court no reason to overrule Preferred Carolinas' objections. AHRN states only that "[t]hese other agreements are reasonably calculated to lead to the discovery of admissible evidence because [Preferred Carolinas'] license to Carolinas MLS is directly relevant to the issue of whether [Preferred Carolinas] owns copyright[s] in the photographs." (Dkt. No. 43 at 7.) But this statement makes no sense—it justifies a request for the

9

Carolinas MLS agreement, which Preferred Carolinas has produced. It does not justify a request for other, unrelated MLS agreements.

AHRN also asserts that these other MLS agreements "are important evidence of Plaintiff's intent to maintain a monopoly with various multiple listing services and exclude competition." *Id.* But assuming that AHRN is referring to its alleged copyright-misuse defense, that defense requires evidence that the copyright holder is attempting to use its copyrights to expand and extend rights secured by the Copyright Act beyond their proper scope. *See, e.g., Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 977 (4th Cir. 1990) (copyright misuse defense "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant") (alterations in original; citation omitted). This lawsuit seeks nothing of the sort—Preferred Carolinas is asking this Court to enforce the copyrights it owns, which it is entitled to do. It is irrelevant whether Preferred Carolinas is party to End User License Agreements with different MLSs governing different photographs not at issue.

### 3. Requests No. 12, 13 and 14 are overly broad because they seek documents unrelated to the copyrighted photographs at issue.

Requests No. 12, 13 and 14 ask Preferred Carolinas to produce all documents "comprising or relating to" its communications with third parties regarding its "copyrights or this lawsuit." (Dkt. No. 43-2 at 18-19.) Preferred Carolinas properly objected to these requests as "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because the requested documents do not relate to any element of the claims and defenses at issue in the case" and because they seek documents "unrelated to the copyrights identified in the Complaint…." *Id.*

Preferred Carolinas' objections to these requests were proper because this case involves ARHN's infringement of copyrights for photographs for nine listings identified in the Complaint. It is irrelevant whether Preferred Carolinas communicated with third parties about its copyrights. The only issues in the case are whether Preferred Carolinas owns the copyrights, whether AHRN wilfully copied Preferred Carolinas' photographs, and whether Preferred Carolinas registered its copyrights prior to filing suit. The fact that Preferred Carolinas may have discussed its copyrights with others is neither relevant to any of these issues nor reasonably calculated to lead to the discovery of admissible evidence.

AHRN's arguments to the contrary are without merit. *First*, AHRN asserts that these communications are relevant to its alleged copyright misuse defense. (Dkt. No. 43 at 8.) A copyright misuse defense requires proof that the copyright claimant is attempting to expand beyond their scope the rights granted by the Copyright Office. *Lasercomb,* 911 F.2d at 977. But Preferred Carolinas is merely suing to enforce its copyrights, which is precisely what the Copyright Act entitles it to do. AHRN's request for all communications with anyone about Preferred Carolinas' copyrights is a fishing expedition unconnected to any alleged copyright-misuse defense.

*Second*, although AHRN asserts that Preferred Carolinas cannot claim undue burden because it has not conducted "even one search of its ESI based on the provided search terms that would have revealed the magnitude of the 'burden' it faces," (Dkt. No. 43 at 10), AHRN's requests are facially overbroad and unduly burdensome because they seek documents having nothing to do with the disputed issues. It is the very act of collecting and searching through these documents that would be overly burdensome. Preferred Carolinas is not and should not be required to undertake the burden it seeks to avoid to sustain its facial objection.

11

*Third*, even though AHRN claims that "[i]t is completely natural and should be expected that AHRN would seek communications from the Plaintiff about copyrights," (Dkt. No. 43 at 11), AHRN and Preferred Carolinas are not similarly situated. Here, Preferred Carolinas alleges that AHRN willfully infringed its copyrights, and AHRN's knowledge of the risks associated with copyright infringement are directly relevant to this issue. Thus, evidence of other instances in which AHRN has been accused of copyright infringement and its knowledge and understanding of copyright law generally are directly at issue in this case. In contrast, Preferred Carolinas' knowledge of and communications generally about copyrights are irrelevant. The only issues regarding Preferred Carolinas are whether it owns the copyrights at issue, whether it registered those copyrights, and—with respect to copyright misuse—whether it is seeking improperly to enforce any rights beyond those copyrights. Requests 12, 13 and 14 are unrelated to any of these issues.

### 4. Preferred Carolinas did not assert "boilerplate" objections, and it did not waive the objections at issue.

With respect to Requests 12, 13 and 14, AHRN claims that Preferred Carolinas waived its objections because they were "boilerplate." (Dkt. No. 43 at 9.) But the mere fact that Preferred Carolinas' objections were concise and, in some cases, similar, does not make them "boilerplate." Preferred Carolinas carefully considered each of AHRN's discovery requests, and it asserted specific objections to specific requests only when appropriate.

Thus, for example, Preferred Carolinas did not object to Request No. 4, which asked for "all Member Participant Request forms submitted by [Preferred Carolinas] to Carolinas MLS related to the photographs contained in Exhibits F-1, G-1, H-1 and I-1 of the Complaint." (Dkt. No. 43-2 at 14.) This was an appropriate document request, and Preferred Carolinas responded

by stating that it would "produce the requested documents, to the extent such documents are in its possession, custody or control." *Id.*

Preferred Carolinas also did not object to Request No. 9, which sought "[c]omplete copies of all deposits accompanying the applications for group registration of copyright in photographs attached as Exhibit A through I to the Complaint…." (Dkt. No. 43-2 at 17.) Again, this request was proper, and Preferred Carolinas responded by stating that it would produce responsive documents.

In contrast, other requests were objectionable. For example, for those requests that were insufficiently particular, including Requests No. 2, 5, 6, 8, and 11-14, Preferred Carolinas properly asserted that objection. Similarly, if a request was overly broad—Requests No. 2, 3, 6, 7, and 12-14—Preferred Carolinas properly asserted that objection.

That Preferred Carolinas concisely stated its objections does not make them boilerplate. *First,* Preferred Carolinas' objections were at least as detailed as AHRN's. *See, e.g.,* Murray Aff. Ex. D (AHRN's objection to Preferred Carolinas Request No. 9 stated "AHRN further objects to this request as overly broad and not reasonably calculated to lead to the discovery of admissible evidence, in that the request reaches beyond actions alleged in the Complaint.) AHRN cannot argue that Preferred Carolinas waived its objections when it used the same objection format as AHRN.

*Second,* under the standard invoked by AHRN's motion (but not in its own discovery responses) if a litigant were to object to a question at trial by standing and saying "objection – hearsay," the objection would be a "boilerplate" objection and waived. But that is not the case. It is not the number of words that determines whether an objection is "boilerplate," it is the way in

13

which the objection is asserted. If an objection is clearly asserted in response to the request and specific enough to convey the basis for the objection, it is sufficient.

Preferred Carolinas' objections satisfy this standard. In response to Requests No. 12, 13 and 14, Preferred Carolinas asserted the following objections:

> **RESPONSE:** Preferred Carolinas objects to this request [as] overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence because the requested documents do not relate to any element of the claims and defenses at issue in the case. Preferred Carolinas objects to this request [as] overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks all documents "relating to" the identified communications and to the extent it seeks documents unrelated to the copyrights identified in the Complaint. Preferred Carolinas objects to this request as vague, ambiguous and insufficiently particular—the request does not identify any "designated documents" being requested as required by Rule 34. Preferred Carolinas objects to this request to the extent it seeks documents protected by the attorney-client privilege and work-product doctrine.

(Dkt. No. 43-2 at 18-20.) These objections are sufficiently specific. They identify the bases for the overly-broad objection—that the requested documents are unrelated to the claims and defenses, they are unrelated to the copyrighted photographs at issue, and they seek all documents "relating to" the requested communications. The objections also identify the basis for the particularity objection—the requests do not sufficiently identify the documents being requested. These objections enable both AHRN and the Court to understand the bases for the objections, and nothing more is required.

### C. Preferred Carolinas properly prepared its 30(b)(6) designee, and AHRN has not identified any proper questions he could not answer.

AHRN identifies three areas where it claims Preferred Carolinas' 30(b)(6) designee was unable to testify. AHRN then asks the Court to order Preferred Carolinas to produce other witnesses—such as Lisa McDowell or Thomas Camp—who can testify on these issues. But

14

AHRN may not identify additional witnesses for depositions, and Preferred Carolinas has provided AHRN with all of the information to which it is entitled.

## 1. AHRN did not properly meet and confer on this issue.

Rule 37 and Local Rule 37.1(a) required AHRN to meet and confer with Preferred Carolinas before filing its motion. AHRN acknowledges that it demanded at the deposition that Preferred Carolinas produce two more people—Thomas Camp and Lisa McDowell—for questioning. (Dkt. No. 43 at 16 and 18.) Because Preferred Carolinas' designee was properly prepared, because AHRN had already used its allotted seven depositions under the Case Management Plan, and because AHRN had chosen not to depose Mr. Camp or Ms. McDowell despite knowing their alleged "central" roles in the case, Preferred Carolinas rejected AHRN's demand.

When the parties met and conferred by telephone on December 27, 2013, AHRN's counsel again demanded that Preferred Carolinas produce Mr. Camp and Ms. McDowell for depositions. AHRN's counsel documented this demand in a December 23, 2013 email requesting the meet and confer:

> We would like to schedule a meet and confer to discuss the following:
>
> ***
>
> 6. Depositions of Lisa McDowell and Thomas Camp.

(Murray Aff. ¶ 15 and Ex. A.)

But in its motion, AHRN no longer wants these two specific depositions; it is demanding only that a "witness" appear who is knowledgeable about the identified matters. (Dkt. No. 43 at 16.) Because AHRN did not meet and confer on this specific request, the Court should deny it.

15

**2.     AHRN does not identify any specific, properly noticed question that Preferred Carolinas' designee could not answer, and Preferred Carolinas subsequently provided AHRN with additional information.**

Even if AHRN had properly met and conferred on the relief it requests in its motion, it still has not identified any properly noticed questions Preferred Carolinas' designee could not answer. What's more, Preferred Carolinas provided additional information to AHRN when its designee completed his errata sheet, and this additional information fills any gaps in the designee's original testimony.

It is, of course, common for a corporate designee to be unable to answer specific questions that fall within a broad 30(b)(6) topic. *See, e.g., QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) ("Absolute perfection is not required of a 30(b)(6) witness. The mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation."). For this reason, Preferred Carolinas sent a letter to AHRN's counsel before the deposition objecting to the scope of some of the topics and reserving the right to supplement the witness's testimony afterwards if he was unable to answer any specific question:

> Preferred Carolinas objects to topics 10 and 11 as vague, ambiguous, overly broad, unduly burdensome and insufficiently particular. These topics ask Preferred Carolinas to designate a witness to testify about "[a]ll matters" set forth in certain declarations and other documents. It is not reasonable or practical to designate a witness to testify about all such matters. Nor does Preferred Carolinas know what subset of these matters AHRN intends to question the witness about. Accordingly, Preferred Carolinas will work with its designated witness to prepare to address those questions relating to the identified matters that Preferred Carolinas reasonably anticipates will be covered in the deposition. To the extent AHRN asks questions that Preferred Carolinas did not anticipate, we reserve the right to supplement the witnesses' testimony to ensure that AHRN gets all of the information reasonably available to the company on the questions asked.

(Murray Aff. ¶ 14 and Ex. B.) As promised, Preferred Carolinas provided additional information with its designee's errata sheet to address issues that Preferred Carolinas had not anticipated would come up and to fill gaps where the witness had made errors or not remembered information provided to him beforehand. (Murray Aff. ¶ 17 and Ex. C.) Preferred Carolinas satisfied its obligations under the rules, and AHRN's complaints are without merit.

AHRN complains, however, that the 30(b)(6) designee—Mr. Washington—could not identify who at Preferred Carolinas determined that the photographs taken by two of its agents did not qualify as works made for hire under the Copyright Act. (Dkt. No. 43 at 14.) But this topic was one of the overly broad topics identified in AHRN's 30(b)(6) notice—topic 2, which requests a witness to testify about Preferred Carolinas' "responses to AHRN's Interrogatories and Requests for Admission." AHRN's complaint illustrates Preferred Carolinas' objection that such a broad topic makes it impossible to ensure that the designee is prepared to answer every conceivable question within the topic. That Mr. Washington could not answer this one specific question within this broad topic does not mean that he was unprepared.

In any event, Mr. Washington answered this question when he filed his errata sheet. Although Mr. Washington did not know who made the determination at the time of his deposition, he later confirmed that the decision was made by Preferred Carolinas' attorneys. A copy of Mr. Washington's errata sheet is submitted with this response. (Murray Aff. Ex. C.)

AHRN's complaints regarding this determination are particularly strange given that there is no dispute that the photographs do not qualify as works made for hire. "Works made for hire" are defined by the Copyright Act as works either prepared by an employee within the scope of employment or specific categories of works specially commissioned from another. 17 U.S.C. § 101. Preferred Carolinas and AHRN agree that photographs taken by independent-contractor,

real-estate agents do not fit within this definition. (Dkt. No. 15 at 14 (AHRN states that photographs do not qualify as works made for hire).) Thus, AHRN appears to be ginning up an otherwise undisputed issue so that it can get additional discovery on other topics and delay resolution of Preferred Carolinas' claims.

ARHN also contends that Mr. Washington could not testify to the precise dates that Ms. McDowell communicated with the Copyright Office and when Preferred Carolinas first started filing copyright registration applications. But these dates are not only immaterial and not covered by any of the noticed topics, but Preferred Carolinas would have considered a request to provide them after the deposition if AHRN had simply asked. This issue does not justify a second 30(b)(6) deposition.

AHRN also argues that Mr. Washington could not respond to certain questions about Mr. Camp's declarations in support of Preferred Carolinas' partial summary-judgment motion, but, again, this issue relates to an overly broad deposition topic seeking testimony regarding the summary-judgment declarations submitted by Mr. Camp and the attached exhibits. Preferred Carolinas properly objected to this overly broad topic. Nonetheless, Preferred Carolinas prepared Mr. Washington to testify on these matters, and AHRN is wrong when it tries to characterize his testimony as insufficient.

For example, AHRN complains that Mr. Washington did not initially know who wrote one of the attached letters to Mr. Camp's declaration. (Dkt. No. 43 at 17.) But as AHRN then acknowledges, Mr. Washington subsequently testified that the letter was written by outside counsel. (Dkt. No. 43 at 17.) Mr. Washington was correct, and this fact does not necessitate a second 30(b)(6) deposition.

AHRN then complains that certain documents that Mr. Washington thought might exist have not been produced. (Dkt. No. 43 at 17.) But neither document falls within any proper document request, and this again does not justify another deposition.

Next, AHRN complains that Mr. Washington did not know whether Mr. Camp had any communications with the brokers or agents who signed referral agreements with AHRN. (Dkt. No. 43 at 18.) But this question does not fall within any of the noticed topics—it is not addressed in Mr. Camp's affidavit or the attached letters. And it does not fit within any other properly noticed topic.

Finally, AHRN argues that it is entitled to depose a corporate representative with knowledge of the authorship of the photographs of the 126 Bear Oak property. (Dkt. No. 43 at 19.) But—as AHRN knows full well—Preferred Carolinas is relying on the sworn testimony of homeowners Amanda and Aleck Carroll for its knowledge regarding who took the 126 Bear Oak property photographs. AHRN deposed Mr. and Mrs. Carroll, and Preferred Carolinas' supplementary registration was based on their testimony. No reason exists for a second deposition of Preferred Carolinas on this issue.

## II.    CONCLUSION

AHRN cannot escape these undisputed facts: it had more than six full months to conduct discovery; it waited until there were only three months left to serve written discovery; and then it waited until the last moment possible to file this motion to compel. AHRN's motion is untimely and unfounded. Preferred Carolinas respectfully asks the Court to deny the motion and award Preferred Carolinas its fees and costs for having to respond to it.

Respectfully submitted,

/s/ Scott E. Murray
Robert D. MacGill (robert.macgill@btlaw.com)
Scott E. Murray (smurray@btlaw.com)
Barnes & Thornburg LLP
11 S. Meridian St.
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433

/s/ Bryan T. Simpson
Bryan T. Simpson (bsimpson@tcdg.com)
NC Bar No. 20136
Teague, Campbell, Dennis & Gorham, LLP
Post Office Box 19207
Raleigh, NC  27619-9207
Telephone: (919) 873-0166
Facsimile: (919) 873-1814


*Attorneys for Preferred Carolinas Realty, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed this 24th day of January, 2014. Notice of this filing will be sent to all recipients listed below by operation of the Court's electronic filing system, which the parties may access through the Court's system.

CHRISTOPHER R. MILLER    c.miller@neighborcity.com

DAVID MATTHEW WILKERSON    dwilkerson@vwlawfirm.com

LARRY STEPHEN MCDEVITT    lmcdevitt@vwlawfirm.com, dwilkerson@vwlawfirm.com, hgoldstein@vwlawfirm.com, lpf@farkastoikka.com, sgarrett@vwlawfirm.com

RICHARD S. TOIKKA    rst@farkastoikka.com

RUSSELL O. PAIGE    rop@farkastoikka.com

*s/Scott E. Murray*