# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PREFERRED CAROLINAS REALTY, INC.,   )
   )
                Plaintiff,   )     Civil Action 1:13-cv-00181-TDS-LPA
   )
     v.   )
   )
AMERICAN HOME REALTY NETWORK,   )
INC., D/B/A NEIGHBORCITY.COM,   )
   )
   )
              Defendant.   )

## PLAINTIFF PREFERRED CAROLINAS REALTY, INC.'S BRIEF IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Robert D. MacGill (robert.macgill@btlaw.com)
Scott E. Murray (smurray@btlaw.com)
Barnes & Thornburg LLP
11 S. Meridian St.
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433

Bryan T. Simpson (bsimpson@tcdg.com)
NC Bar No. 20136
Teague, Campbell, Dennis & Gorham, LLP
Post Office Box 19207
Raleigh, NC 27619-9207
Telephone: (919) 873-0166
Facsimile: (919) 873-1814

*Attorneys for Preferred Carolinas Realty, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................1

        A.      Preferred Carolinas is a North Carolina real-estate brokerage. ...............1

        B.      AHRN surreptitiously scraped real-estate listings from other websites ..................1

        C.      When it discovered its photographs on AHRN's website, Preferred
                Carolinas demanded that AHRN remove them ......................................................4

        D.      AHRN continued displaying Preferred Carolinas' photographs after
                receiving the Cease-and-Desist Letter ...................................................................4

                1.      3409 Peninsula Court, Monroe, NC ("Peninsula Court Property") .............4

                2.      427 Carolina Avenue, Raleigh, NC ("Carolina Avenue Property") ............6

                3.      126 Bear Oak, Smithfield, NC ("Bear Oak Property") ...............................7

                4.      2132 Bellaire Avenue, Raleigh, NC ("Bellaire Avenue Property");
                        109 London Plain Court, Cary, NC ("London Plain Property");
                        3622 Trail Twenty Three, Durham, NC ("Trail 23 Property") ....................7

                5.      241 Kimberly Road, Davidson, NC ("Kimberly Road Property")
                        5453 Ashbury Lane, Davidson, NC ("Ashbury Lane Property")
                        420 Windward Drive, Davidson, NC ("Windward Drive Property") ..........8

III.    STATEMENT OF THE QUESTIONS PRESENTED ........................................8

IV.     SUMMARY-JUDGMENT STANDARD ...........................................................9

V.      ARGUMENT ......................................................................................................9

        A.      To prevail, Preferred Carolinas must prove (1) ownership of a valid
                copyright in a work and (2) AHRN's copying of that work ....................................9

        B.      Preferred Carolinas owns copyrights in the listing photographs ..........................10

        C.      AHRN infringed Preferred Carolinas' copyrights .................................................11

D.      AHRN cannot avoid liability by relying on its affirmative defenses.....................12

         1.      AHRN's copying was not "fair use.".........................................................12

         2.      AHRN did not have a license to use the photographs ...............................15

         3.      Preferred Carolinas is not misusing its copyrights ...................................17

         4.      AHRN cannot avoid liability by fabricating ownership disputes ..............18

E.      Preferred Carolinas is entitled to injunctive relief .................................................19

F.      AHRN's willful, unlawful conduct entitles Preferred Carolinas to enhanced statutory damages ...................................................................................19

VI.      CONCLUSION...................................................................................................................20

CERTIFICATE OF SERVICE ......................................................................................................22

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................9

*Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012) .....................................................................13

*BellSouth Advertising & Publ'g. Corp. v. Donnelley Info. Publishing*, 933 F.2d 952
    (11th Cir. 1991) .......................................................................................................17

*Bouchat v. Baltimore Ravens Ltd. P'ship.*, 737 F.3d 932, 2013 U.S. App. LEXIS 25001
    (4th Cir. 2013) ...................................................................................................12, 13

*Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) ...................................................13

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ...........................................................14

*Celotex Corp. v. Catrett*, 477 U.S. 317 ..........................................................................................9

*CoStar, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004) .......................................................10

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) ...............................................9, 13

*Everroad v. Scott Truck Sys.*, 604 F.3d 471 (7th Cir. 2010) ..........................................................9

*Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006) .......................................9

*Jobete Music Co. v. Media Broadcasting Corp.*, 713 F. Supp. 174 (M.D.N.C. 1988) .................19

*Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990) .................................................17

*Lyons P'ship., L.P. v. Morris Costumes, Inc.*, 243 F.3d 789 (4th Cir. 2001) ...............................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ............................9

*Met. Reg'l. Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, No. 12-2102, 2013 U.S.
    App. LEXIS 14445 (4th Cir. July 17, 2013) .....................................................18, 19

*Metropolitan Regional Information System v. America Home Realty Network, Inc.*, 888
    F. Supp. 2d 691 (D. Md. 2012) .............................................................................18

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) .................................................14

iii

*Murphy v. Millennium Radio Group LLC*, 650 F.3d 295 (3d Cir. 2011).......................................13

*N.Y. Times Co. v. Tasini*, 533 U.S. 483 (2001) ................................................................10

*Universal Furniture Int'l., Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417 (4th Cir. 2010) ..........................................................................................................................10

*Video Pipeline, Inc. v. Buena Vista Home Entmt., Inc.*, 342 F.3d 191 (3d Cir. 2003) .................17

### STATE CASES

*Investment Properties of Asheville, Inc. v. Allen*, 196 S.E.2d 262 (N.C. 1973) ...........................16

*Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 528 S.E.2d 918 (N.C. Ct. App. 2000) ...........................................................................................................................17

### FEDERAL STATUTES

17 U.S.C. § 101 ......................................................................................................................10

17 U.S.C. § 102 ........................................................................................................................9

17 U.S.C. § 106 ......................................................................................................................10

17 U.S.C. § 107 ......................................................................................................................12

17 U.S.C. § 204(a) ..................................................................................................................10

17 U.S.C. § 410(c) ..................................................................................................................10

17 U.S.C. § 411(b)(1) .............................................................................................................19

17 U.S.C. § 501 ......................................................................................................................10

17 U.S.C. § 504(a) ..................................................................................................................19

17 U.S.C. § 504(c)(1) .............................................................................................................19

17 U.S.C. § 504(c)(2) .............................................................................................................19

### STATE STATUTES

Cal. Civ. Code § 1654 .............................................................................................................17

# I.     INTRODUCTION

Discovery has confirmed that American Home Realty Network, Inc. ("AHRN") is a serial copyright infringer. For years, AHRN surreptitiously scraped real-estate listings from the web to get photographs to use on its www.neighborcity.com website. Many copyright owners—including Preferred Carolinas—sent letters demanding that AHRN stop. But it refused. In two cases, AHRN was even held in contempt for failing to comply with federal-court injunctions.

This case involves 72 photographs displayed on AHRN's site. Preferred Carolinas owns the copyrights in these photographs, and AHRN copied and posted them after Preferred Carolinas told AHRN not to do so. These facts are not disputed; they establish AHRN's liability for willful copyright infringement; and they entitle Preferred Carolinas to partial summary judgment. The only remaining issue for trial is the amount of damages.

# II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

## A.     Preferred Carolinas is a North Carolina real-estate brokerage.

Preferred Carolinas, a real-estate brokerage, operates using independent-contractor agents. (Washington Decl. ¶¶ 4, 6.) These agents market properties under the Preferred Carolinas name and its operating names, and they use its www.prucarolinas.com website. *Id.* Preferred Carolinas and its agents use photographs and home descriptions to create listings to market properties to potential buyers. *Id.* ¶ 7. They then distribute these listings to multiple listing services ("MLSs") and other outlets. (McDowell Decl. ¶ 8.) Generally, agents and third parties who take photographs assign to Preferred Carolinas all copyrights. (Washington Decl. ¶ 8.)

## B.     AHRN surreptitiously scraped real-estate listings from other websites.

AHRN is a California company that operates a website at www.neighborcity.com. *Id.* ¶ 9. During the relevant period, AHRN's website allowed users to search and view real-estate listings for properties located throughout the United States, including in North Carolina. *Id.* If a user

indicated interest in a listed property, AHRN would refer the user to an agent in exchange for a portion of the agent's commission. (Dkt. No. 20 at 1.) When AHRN started, it obtained access to listings by joining dozens of MLSs across the country. (Cardella Dep. at 14-15.)[1] AHRN paid tens-of-thousands of dollars per year to access these listings. *Id.* at 15.[2]

Around 2010, AHRN decided to withdraw from the MLSs. *Id.* at 16-17. AHRN then faced a decision—"go out of business or find another way to access the content." *Id.* at 51-52. AHRN first tried to license the listings from ListHub and Point2 MLS—two companies that had their own agreements with MLSs. *Id.* at 18-19. But neither company agreed to license the listings to AHRN. *Id.* at 21.

When its attempt to license the listings failed, AHRN decided to "scrape" the listings from other sources. *Id.* at 22-23. Jonathan Cardella—AHRN's CEO—described AHRN's plan:

> When [the effort to license the listings from ListHub or Point2] failed, we had to come up with a second prong. It was that or, you know, potentially go out of business. So the second prong consisted of a combination of web crawling or web page fetching as Google calls it. I think it's more accurate to call it scraping, because what we really did was to write programs that go out and extract the listing content from various web pages and bring it back to us to be processed, and, you know, used to update our database, at least in content.

*Id.* at 21-22.

AHRN understood that its decision to scrape real-estate listings exposed it to possible copyright-infringement liability. *Id.* at 36-37; 48-49; 53. But Mr. Cardella, who is not a lawyer, chose to perform the company's copyright analysis. *Id.* at 29, 40-41, 44. AHRN did not engage outside counsel to determine whether its scraping was legal (*id.* at 173-74), and Mr. Cardella acknowledged that AHRN risked a lawsuit by doing so:

---

[1] True and accurate copies of all cited deposition excerpts are attached to the Murray Declaration.

[2] AHRN appears to have recently changed its website. As of at least January 31, 2014, www.neighborcity.com was not displaying listing photographs. Instead, it either indicated that no photograph was available or it showed only a single photograph of the exterior of the house taken from Google.

I understood that I could pay for the opinions of other firms with respect to whether I was reading [a particular copyright] case properly, but in the end that was something that would have to be proven out in litigation, and I would not know until it was actually in front of a court of law.

*Id.* at 165-66.

Mr. Cardella acknowledged at his deposition that it would have been prudent to hire an intellectual-property attorney to analyze copyright issues. *Id.* at 172-73. But Mr. Cardella refused to put his own money into the company to perform such an analysis, even though he had made millions of dollars by selling a prior company. *Id.* at 159-60, 174-75. Mr. Cardella explained:

Q:  Did you consider investing additional money into AHRN so that it could afford to engage counsel to perform a copyright analysis?

A:  I don't recall. But as a general rule of thumb, I wasn't—I wasn't in a position to invest capital at the time.

Q:  Are you suggesting you didn't have money to invest in AHRN at that time?

A:  I don't know what you mean by whether I had the money to invest, but at the time I was not an investor. I didn't think that it made sense to put the money into this company.

*Id.* at 175.

Despite the uncertainty surrounding possible copyright infringement, AHRN began scraping real-estate listings and photographs from another website, www.realtor.com. *Id.* at 53-54. AHRN never told the site's owner, Move, Inc., that AHRN was scraping its content, and Move, Inc. never gave AHRN permission to do so. *Id.* at 137. AHRN acknowledges that www.realtor.com's terms of use prohibit scraping (*id.* at 162-63), and AHRN knew that Move, Inc. had implemented technological safeguards to prevent others from using automated processes to scrape its site's content. (*Id.* at 59, 120-30.) AHRN knew that, to continue getting access to the listings, it had to structure its scraping to try to avoid detection by Move, Inc. and the limitations

3

that it had put in place. *Id.* at 128-29; 134-35. Even after receiving a cease-and-desist letter from Move, Inc., AHRN continued scraping listings from www.realtor.com. *Id.* at 138-40.

### C. When it discovered its photographs on AHRN's website, Preferred Carolinas demanded that AHRN remove them.

When Preferred Carolinas discovered that its listing photographs were on www.neighborcity.com, it immediately objected. On January 5, 2012, Preferred Carolinas' parent company sent a letter to AHRN demanding that AHRN stop infringing Preferred Carolinas' copyrights, as well as the copyrights of other subsidiary brokerages ("Cease-and-Desist Letter"). *Id.* at 251, Ex. 15. AHRN refused this demand in a letter dated March 1, 2012. (Miller Dep. at 28-29, Ex. 28.) In its response, AHRN did not dispute that it had used and was continuing to use Preferred Carolinas' copyrighted photographs. *Id.* Nor did AHRN claim to have a license to use Preferred Carolinas' copyrighted material. *Id.* Instead, AHRN asked for a "custom license," thereby acknowledging that it did not have a license to use the copyrighted material. *Id.* Preferred Carolinas did not grant that request. (Washington Decl. ¶ 30.)

### D. AHRN continued displaying Preferred Carolinas' photographs after receiving the Cease-and-Desist Letter.

AHRN did not comply with the Cease-and-Desist Letter, which led to this lawsuit. The Complaint identifies 72 photographs copied by AHRN and displayed on www.neighborcity.com after the Cease-and-Desist Letter. These photographs are described below:

#### 1. 3409 Peninsula Court, Monroe, NC ("Peninsula Court Property")

Preferred Carolinas employee Sheri Higgins listed the Peninsula Court Property on May 3, 2012. (Higgins Decl. ¶ 4.) The listing contained 16 photographs taken by Ms. Higgins, which were first published on May 3, 2012. *Id.* ¶ 4, Ex. A. An excerpt of Preferred Carolinas' listing appears below. *Id.*

4



On June 22, 2012, Preferred Carolinas filed an application with the United States Copyright Office to register its copyrights in the Peninsula Court Property photographs. (Washington Decl. ¶ 23.) The Copyright Office granted the application and assigned copyright-registration number VA0001822336. *Id.* at ¶ 23 and Ex. F.

AHRN copied eight of the Peninsula Court Property photographs and displayed them on www.neighborcity.com. (Matsoukas Decl. ¶ 4, Ex. F.) The following screenshot shows a page from www.neighborcity.com as it existed on July 5, 2012:

5



*Id.*

## 2. 427 Carolina Avenue, Raleigh, NC ("Carolina Avenue Property")

Agent Jill Flink listed the Carolina Avenue Property on March 27, 2012. (2nd Flink Decl. ¶ 4.) The listing contained 25 photographs taken by Ms. Flink, who executed a written agreement assigning all her rights in the photographs to Preferred Carolinas. *Id.* ¶¶ 4, 6 and Ex. A, B. The photographs were first published on March 27, 2012. *Id.* ¶ 4. On June 18, 2012, Preferred Carolinas filed an application with the Copyright Office to register its copyrights in the Carolinas Avenue Property photographs. (Washington Decl. ¶ 13.) The Copyright Office granted the

6

application and assigned registration number VA0001822349 to the photographs. *Id*. at ¶ 13 and Ex. A. AHRN copied eight of the Carolinas Avenue Property photographs and displayed them on www.neighborcity.com. (Matsoukas Decl. ¶ 4, Ex. A.)

### 3. 126 Bear Oak, Smithfield, NC ("Bear Oak Property")

Agent Kara Sanford listed the Bear Oak Property on March 31, 2012. (Sanford Decl. ¶ 4.) The listing included 18 photographs taken by property owners Amanda and Aleck Carroll. (Am. Carroll Dep. at 14-16, 24-25; Al. Carrol Dep. pp. 9-10.) The Carrolls executed a written agreement assigning all their rights in and to the photographs to Preferred Carolinas. (Am. Carroll Dep. at 9, Ex. 3.) The photographs were first published on March 27, 2012. (Sanford Decl. ¶ 4.) On June 18, 2012, Preferred Carolinas filed an application with the Copyright Office to register its copyrights in the Bear Oak Property photographs. (Washington Decl. ¶ 15.) The Copyright Office granted the application and assigned registration number VA0001826761. *Id*. at ¶ 15 and Ex. B. Preferred Carolinas subsequently filed a Supplementary Registration Application to reflect new information provided by the Carrolls regarding the authorship of these photographs. (McDowell Decl. ¶ 7, Ex. A.) AHRN copied eight of the Bear Oak Property photographs and displayed them on www.neighborcity.com. (Matsoukas Decl. ¶ 4, Ex. B.)

### 4. 2132 Bellaire Avenue, Raleigh, NC ("Bellaire Avenue Property"); 109 London Plain Court, Cary, NC ("London Plain Property"); 3622 Trail Twenty Three, Durham, NC ("Trail 23 Property")

Preferred Carolinas employee Kristen Fields took the photographs for the Bellaire Avenue Property (20 photographs), the London Plain Property (24 photographs), and the Trail 23 Property (25 photographs). (Fields Decl. ¶ 4.) Preferred Carolinas filed copyright-registration applications for all the photographs within three months after they were published. (Young Decl. ¶ 4; Faltisco Decl. ¶ 4; Bromhal Decl. ¶ 4; Fields Decl. ¶ 5; Washington Decl. ¶¶ 17, 19, 21.) The Copyright Office granted the applications and assigned registration numbers VA0001822340,

7

VA0001822330, and VA0001822334, respectively. (Washington Decl. ¶¶ 17, 19, and 21 and Ex. C, D and E.) AHRN copied eight of the Bellaire Avenue Property photographs, eight of the London Plain Property photographs, and eight of the Trail 23 Property photographs, and displayed them on www.neighborcity.com. (Matsoukas Decl. ¶ 4, Ex. C, D and E.)

     **5.**     **241 Kimberly Road, Davidson, NC ("Kimberly Road Property")**
           **5453 Ashbury Lane, Davidson, NC ("Ashbury Lane Property")**
           **420 Windward Drive, Davidson, NC ("Windward Drive Property")**

Agent Mary Lib Richards took the photographs for the Kimberly Road Property (16 photographs), the Ashbury Lane Property (16 photographs), and the Windward Drive Property (16 photographs). (Richards Decl. ¶¶ 5-7, Ex. B-D.) Ms. Richards assigned her copyrights in these photographs to Preferred Carolinas. (Richards Decl. ¶¶ 3, 4, 8, Ex. A.) Preferred Carolinas filed copyright-registration applications for all the photographs within three months after they were published. (*Id.* ¶¶ 5-7; Washington Decl. ¶¶ 25, 27 and 29.) The Copyright Office granted the applications and assigned registration numbers VA0001820847, VA0001820846, and VA0001820845, respectively. (Washington Decl. ¶¶25, 27, and 29 and Ex. G-2, H-1 and I-1.) AHRN copied eight of the Kimberly Road Property photographs, eight of the Ashbury Lane Property photographs, and eight of the Windward Drive Property photographs and displayed them on www.neighborcity.com. (Matsoukas Decl. ¶ 4, Ex. G, H and I.)

## III.    STATEMENT OF THE QUESTIONS PRESENTED

     A.    Is Preferred Carolinas entitled to summary judgment on the issue of copyright-infringement liability?

     B.    Does AHRN's knowing and intentional infringement of Preferred Carolinas' copyrights entitle Preferred Carolinas to enhanced statutory damages?

## IV.    SUMMARY-JUDGMENT STANDARD

Summary judgment motions are not disfavored shortcuts; instead, they are an integral part of the Federal Rules, designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Rule 1). Summary judgment is required if the movant shows there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists only if the evidence presented could lead a reasonable factfinder to return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). The Court must view the evidence and any reasonable inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

The moving party can satisfy its burden by identifying an absence of evidence to support the non-moving party's case. *See Celotex Corp.* 477 U.S. at 325. The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus*., 475 U.S. at 586-87 (citation omitted) (emphasis in original). Summary judgment proceedings provide the "put up or shut up" moment in litigation. *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 476 (7th Cir. 2010). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

## V.    ARGUMENT

### A.    To prevail, Preferred Carolinas must prove (1) ownership of a valid copyright in a work and (2) AHRN's copying of that work.

Copyright protection extends to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. Photographs are generally copyrightable. *See, e.g., Ets-Hokin v. Skyy Spirits, Inc.,* 225 F.3d 1068, 1077 (9th Cir. 2000). Section 106 of the Copyright

9

Act gives copyright owners an exclusive bundle of rights, including the right to reproduce the work, the right to prepare derivative works, and the right to publicly display the work. 17 U.S.C. § 106; *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 496 n.4 (2001). A defendant infringes a copyright when he or she violates one of these exclusive rights. 17 U.S.C. § 501.

"[T]o establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *CoStar, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004). A certificate of registration issued by the Copyright Office is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). If a certificate of registration exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010).

**B.       Preferred Carolinas owns copyrights in the listing photographs.**

Preferred Carolinas has satisfied the first element of its copyright-infringement claim—its ownership of valid copyrights.

*First*, the Copyright Office issued copyright registrations to Preferred Carolinas for all of the photographs identified in this motion. *See, supra,* § II.D. These registrations are prima facie evidence that the copyrights are valid and owned by Preferred Carolinas. *See* 17 U.S.C. § 410(c).

*Second*, Preferred Carolinas has established its ownership through the designated evidence. All the photographs at issue were either taken by Preferred Carolinas' employees, its independent contractors, or homeowners. *See, supra,* § II.D. Preferred Carolinas owns the copyrights in the photographs taken by its employees because they are "works made for hire." 17 U.S.C. § 101. Preferred Carolinas owns the copyrights in the photographs taken by its independent-contractor agents and the homeowners because they transferred their copyrights to Preferred Carolinas under written assignment agreements. *See, supra,* § II.D; 17 U.S.C. § 204(a).

10

### C. AHRN infringed Preferred Carolinas' copyrights.

Preferred Carolinas has also satisfied the second element of its infringement claim—AHRN's copying of Preferred Carolinas' photographs.

*First,* AHRN admits that the photographs in the www.neighborcity.com screenshots at issue are the same photographs found in Preferred Carolinas' listings. (Cardella Dep. at 203-206, 316 and Ex. 1-C to 9-C and 1-D to 9-D.) The Court can also confirm this by comparing the Preferred Carolinas' listings with the companion www.neighborcity.com listings for the same properties. For example, Exhibit A to this brief shows two screenshots comparing the Preferred Carolinas listing for the Carolinas Avenue Property to the AHRN listing on www.neighborcity.com. The red ovals and numbers were added to aid the comparison.

Each of the numbered photographs from the Preferred Carolinas listing for the Carolinas Avenue Property is identical to the photograph bearing the same number on www.neighborcity.com. A similar comparison of the Preferred Carolinas listings to AHRN's listings for the remaining properties at issue shows: eight identical photographs of the Bear Oak Property; eight identical photographs of the Bellaire Avenue Property; eight identical photographs of the London Plain Property; eight identical photographs of the Trail 23 Property; eight identical photographs of the Peninsula Property; eight identical photographs of the Kimberly Road Property; eight identical photographs of the Ashbury Lane Property; and eight identical photographs of the Windward Drive Property. *See, supra,* § II.D.

*Second,* AHRN admits that, in 2012, it obtained the listing photographs displayed on www.neighborcity.com by scraping the photographs from www.realtor.com. *See, supra,* § II.B. AHRN admits that Move, Inc., the owner of www.realtor.com, did not give AHRN permission to scrape the photographs and that AHRN tried to deliberately conceal its scraping. *Id.* Indeed, www.realtor.com's terms of use forbid scraping. (Murray Decl. ¶4, Ex. M at 2.) AHRN also

11

admitted to copying Preferred Carolinas' photographs when it responded to Preferred Carolinas' Cease-and-Desist Letter by requesting a "custom license" to enable it "to continue using" the listing data. *See, supra,* § II.C. This request "to continue using" the listing data was an admission that AHRN was, in fact, using Preferred Carolinas' listing data and photographs at that time.

### D. AHRN cannot avoid liability by relying on its affirmative defenses.

AHRN's answer asserts fourteen conclusory affirmative defenses. Many are not really defenses but are instead challenges to the elements of Preferred Carolinas' claims. For the reasons stated above, Preferred Carolinas has proven its infringement case, and AHRN's challenges fail. We address AHRN's remaining affirmative defenses below:

### 1. AHRN's copying was not "fair use."

AHRN cannot prove a "fair use" defense. This defense allows a third party to use a copyrighted work for "purposes such as criticism, comment, news reporting, teaching…, scholarship, or research…." 17 U.S.C. § 107. When assessing this defense, factors include:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

The first factor—the purpose and character of the use—focuses on whether the new work is "transformative" and the extent to which its use is commercial. *Bouchat v. Baltimore Ravens Ltd. P'ship,* 737 F.3d 932, 2013 U.S. App. LEXIS 25001, *13 (4th Cir. 2013). "A 'transformative' use is one that employ[s] the quoted matter in a different manner or for a different purpose from the original, thus transforming it." *Id.* (internal quotation marks omitted). "Importantly, a transformative use is one that adds something new to the original purpose of the copyrighted work." *Id.* at *14 (internal quotation marks omitted). "Where an original work is

12

merely retransmitted in a different medium or where the resulting use of the copyrighted work…[is] the same as the original use, the new work is not 'transformative.'" *Balsley v. LFP, Inc.,* 691 F.3d 747, 759 (6th Cir. 2012) (internal quotation marks and citation omitted). Though not dispositive, commercial use weighs against fair use. *Bouchat,* 2013 U.S. App. LEXIS 25001 at 20-21. "[T]he degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise—affects the weight" due to the commercial character of a particular use." *Id.* at *22 (internal quotation marks omitted).

Here, AHRN and Preferred Carolinas used the photographs for the same exact purpose—to market residential properties. Preferred Carolinas posted the photographs on its website and licensed them to MLSs and other outlets to allow potential buyers to view properties. Similarly, AHRN copied the photographs and posted them on [www.neighborcity.com](http://www.neighborcity.com) to allow potential buyers to view properties. There is nothing transformative about AHRN's use of the photographs, and AHRN used them for a commercial purpose. This first factor weighs heavily against a fair-use finding. *See, e.g., Murphy v. Millennium Radio Group LLC,* 650 F.3d 295, 307 (3d Cir. 2011) (use was not transformative where defendant did not want to expend effort to create its own photographs but instead copied plaintiff's photographs for the same purpose).

The second factor—the nature of the copyrighted work—also weighs against a fair-use finding. It is well established that photographs require the minimal creativity necessary to qualify for copyright protection. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) (upholding the copyright of a photograph of Oscar Wilde); *Ets-Hokin*, 225 F.3d at 1076 (noting Judge Learned Hand's observation that "no photograph, however simple, can be unaffected by the personal influence of the author"). The quality of the listing photographs and the photographers' judgments about framing, lighting, perspective, and subject matter are important

13

to determining the value and usefulness of the final product. Mrs. Carroll's testimony illustrates this fact. Mrs. Carroll testified that she first took many pictures of their home for the listing. (Am. Carroll Dep. at 7.) When she showed them to her husband, he was unhappy with several of them and took new photographs to replace them. *Id.* Thus, the photographers exercised their personal judgment, creativity, and preferences when they took the photographs, which satisfies show the minimal creatively necessary for copyright protection.

The third factor—the amount and substantiality of the copied work—also weighs against fair use. AHRN used exact copies of each of the photographs, and it copied not just one, but eight photographs for each property listing. *See, supra,* § II.D. *See, e.g., Monge v. Maya Magazines, Inc.,* 688 F.3d 1164, 1178-80 (9th Cir. 2012) (fair use inapplicable where defendant copied 100% of each photograph and displayed five—rather than just one—of the photographs).

Finally, the fourth factor—the potential impact on the copyrighted photographs' value— also weighs against fair use. This factor requires courts to consider both the extent of market harm caused by the infringer's actions and "'whether unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market' for the original." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 (1994). "[W]hen a commercial use amounts to mere duplication of the entirety of an original, it clearly 'supersede[s] the objects' of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur." *Id.* at 591 (internal citations omitted).

Here, AHRN used the photographs for the same purpose as Preferred Carolinas—to market properties to potential buyers, or, as Mr. Cardella testified, "to promot[e] properties on behalf of [Preferred Carolinas'] clients…." (Cardella Dep. at 298.) Preferred Carolinas and its

14

agents spend significant time, effort and resources to obtain listings and photograph the properties, and Preferred Carolinas already licenses its photographs to MLSs, third-party brokers, and other outlets. (McDowell Decl. ¶ 8.) If the Court permits AHRN to scrape these photographs without permission so that it can insert itself into the real-estate transaction to claim a share of the agents' commission, any other company would be allowed to do the same. This would destroy the market for Preferred Carolinas' copyrighted photographs and their value. This factor weighs heavily against a fair-use defense.

### 2. AHRN did not have a license to use the photographs.

AHRN claims a license in its Tenth Defense. (Dkt. No. 11 at 5.) In support, AHRN relies on so-called "Standard Referral Agreements" allegedly executed by a handful of Preferred Carolinas real-estate agents. AHRN submitted the five agreements on which it is relying with its opposition to Preferred Carolinas' first summary-judgment motion. (Cardella Dep. at 321-22; Dkt. 15-4 and 20.) [3] None of these alleged agreements absolves AHRN from liability.

*First*, all the alleged licenses permit unilateral termination. (Dkt. No. 15-4 at 15 (¶ 10); 20 (¶ 12); 24 (¶ 12); and 33 (¶ 12); Dkt. No. 20 at 6 (¶ 12).) And all but one of the agreements pre-date both Marlys Gould's January 5, 2012 Cease-and-Desist Letter and Thomas Camp's April 4, 2012 termination letter. (Dkt. No. 15-4 at 17, 21, 25 and 34.) Thus, assuming these agreements were *ever* enforceable, they were terminated when Ms. Gould and Mr. Camp sent their letters, and they were not in effect in July 2012 when AHRN infringed the photographs at issue.

*Second*, AHRN cannot rely on the July 2, 2012 agreement it previously submitted in opposition to Preferred Carolinas' first summary-judgment motion. (Dkt. No. 20.) This alleged agreement was purportedly executed by real-estate agent Gregg Cantagallo. *Id.* at 8. As an

---

[3] AHRN submitted a sixth agreement purportedly executed by Marlene Peeler, who has never been a Preferred Carolinas agent. (Camp Decl. ¶¶ 14-15.) It appears that Ms. Peeler is an agent for a different North Carolina broker who also operates under the Prudential Carolinas assumed name. *Id.*

15

independent contractor, Mr. Cantagallo could only bind Preferred Carolinas to a contract if he had actual or apparent authority to do so. *Investment Properties of Asheville, Inc. v. Allen,* 196 S.E.2d 262, 285 (N.C. 1973). Mr. Cantagallo had neither.

Mr. Camp and Mr. Cantagallo both testified that Mr. Cantagallo did not have actual authority to license Preferred Carolinas' photographs to AHRN, and Mr. Camp's April 4, 2012 letter precludes AHRN from asserting apparent authority. (2nd Camp Decl. ¶ 6; Cantagallo Decl. ¶ 9; Camp Decl. ¶ 9, Ex. A (letter to AHRN from Camp stating: "[O]n a going forward basis, any proposal by [AHRN] to enter into an agreement with Preferred Carolinas should be communicated directly to me. No other person or entity has authority to enter into any agreement with [AHRN] on Preferred Carolinas'[] behalf."); *Allen,* 196 S.E.2d at 285 ("One dealing with an agent…with known limited authority can acquire no rights against the principal when the agent…acts beyond his authority or exceeds the apparent scope thereof." (Internal quotation marks omitted.)).

*Third,* the alleged referral agreement does not grant the license AHRN claims. In the last paragraph under the heading "Proof of Acceptance," the agreement states: "By signing this Agreement, you give American Home Realty Network, Inc. consent to use your name and the information regarding Your listings and the transactions in which You have cooperated for promotional purposes on Our website(s)." (Dkt. No. 20 at 7.) This language says nothing about photographs—consent to using "information regarding Your listings" is not equivalent to consent to using "Your photographs."

It is also not clear that this language applies to all of Preferred Carolinas' listings. The capitalized "You" is a defined term that includes both the Receiving Broker (Preferred Carolinas) and the agent (Mr. Cantagallo). The lowercase "you" includes only the accepting

16

agent (Mr. Cantagallo). The consent in the referral agreement states only that Mr. Cantagallo consents to use of information regarding the listings—it does not say that Preferred Carolinas' consents. At best, these are ambiguities that must be construed against AHRN as the drafter. Cal. Civ. Code § 1654.[4]

Finally, after it received Ms. Gould's cease-and-desist letter, AHRN admitted it did not have permission to use the photographs. In its March 1, 2012 response, AHRN requested that the parties "enter into a discussion to develop a 'custom license' that would enable [AHRN] to continue to use the listing data" in which Preferred Carolinas and its sister companies claimed a proprietary interest. (Miller Dep. Ex. 28.) If AHRN already had a license to use the photographs in March 2012, it would not have requested a "custom license" from Preferred Carolinas.

### 3. Preferred Carolinas is not misusing its copyrights.

AHRN cannot avoid liability by asserting copyright misuse. A copyright-misuse defense requires evidence that the copyright holder is attempting to use its copyrights to expand rights secured by the Copyright Act beyond their proper scope. See, e.g., Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 977 (4th Cir. 1990) (misuse defense "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant") (alterations in original; citation omitted). Even then, the defense only prevents enforcement during the period of misuse. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191, 203-206 (3d Cir. 2003).

Here, there is no evidence of any misuse—Preferred Carolinas is asking the Court to enforce the copyrights it owns, which it is entitled to do. The mere act of enforcing a copyright against an infringer is not copyright misuse. BellSouth Advertising & Publ'g Corp. v. Donnelley

---

[4] The referral agreement contains a California choice-of-law provision, but the result would be the same under North Carolina law. Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 528 S.E.2d 918, 921 (N.C. Ct. App. 2000).

*Info. Publishing*, 933 F.2d 952, 961 (11th Cir. 1991); *Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 712 (D. Md. 2012).

### 4.   AHRN cannot avoid liability by fabricating ownership disputes.

Since this case began, AHRN has attempted to avoid liability by questioning whether Preferred Carolinas owns the copyrights for the photographs at issue. There is no material dispute regarding ownership. The photographers who were deposed all testified that Preferred Carolinas owns the copyrights. (Higgins Dep. at 24-25, 27-28; Am. Carroll at 26-27; Al. Carroll at 13-14.) The agents who assigned their copyrights to Preferred Carolinas have confirmed the nature of their assignments. (Richards Decl. ¶ 8; 2nd Flink Decl. ¶ 6.) The MLSs confirmed that they do not claim ownership of the photographs. (Wiest Dep. at 94-95; Howard Dep. at 71-72.) And AHRN has no evidence that anyone else owns the copyrights at issue. AHRN—the infringer—cannot create ownership disputes to avoid liability.

As the Fourth Circuit recently held in affirming an injunction against AHRN, the Copyright Act provisions on assignments were intended to resolve disputes between owners and transferees; they were not intended to benefit infringers. It would be anomalous to allow "AHRN to fabricate for its own benefit a dispute between [the owner and assignee] over copyright ownership in the photographs." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, No. 12-2102, 2013 U.S. App. LEXIS 14445, *26-27 (4th Cir. July 17, 2013).

Nor can AHRN avoid liability on the Bear Oak Property by pointing to inadvertent mistakes in the copyright-registration application. When Preferred Carolinas filed its application, it relied on information from the agent that the property's photographs were taken jointly by the homeowners, Mr. and Mrs. Carroll. (McDowell Decl. ¶ 7.) Preferred Carolinas subsequently learned that this information was inaccurate and that Mrs. Carroll took some of the photographs, Mr. Carroll took some, and the agent took two of them. *Id.* All the photographs that AHRN

18

copied were taken by either Mr. or Mrs. Carroll, both of whom assigned their copyrights to Preferred Carolinas. Thus, there is no dispute that Preferred Carolinas now owns these copyrights and can enforce them. AHRN cannot rely on an inadvertent mistake in Preferred Carolinas' copyright-registration application to avoid liability. 17 U.S.C. § 411(b)(1).[5]

### E. Preferred Carolinas is entitled to injunctive relief.

When copyright infringement occurs, the copyright owner is entitled to an injunction if there is "a substantial likelihood of further infringement." *Jobete Music Co. v. Media Broadcasting Corp.,* 713 F. Supp. 174, 179 (M.D.N.C. 1988) (internal quotation marks omitted).

Here, AHRN built its entire website around copying millions of others' photographs. AHRN refused to comply with Preferred Carolinas' demand to cease and desist from infringing Preferred Carolinas' copyrights. And it was held in contempt for failing to comply with two federal-court injunctions. *See Metro. Reg'l Info. Sys., Inc. v. AHRN,* C.A. 8:12-cv-00954-AW (D. Md.) (Dkt. No. 185, 223 and 290); *Reg'l Multiple Listing Serv. of Minn., Inc. v. AHRN,* C.A. 12-cv-00965-JRT-FLN (D. Minn.) (Dkt. No. 121). Given these facts, there is a substantial likelihood that AHRN will infringe Preferred Carolinas' copyrights in the future, and the Court should enter a permanent injunction prohibiting it from doing so.

### F. AHRN's willful, unlawful conduct entitles Preferred Carolinas to enhanced statutory damages.

A copyright-infringement plaintiff is entitled to statutory damages. *See* 17 U.S.C. § 504(a). Statutory damages range from $750 to $30,000 for each infringed work, depending on what the court deems just. *See* 17 U.S.C. § 504(c)(1). If the infringement is willful, the court can increase the statutory damages to $150,000 for each infringed work. *See* 17 U.S.C. § 504(c)(2).

---

[5] "A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

Willfulness can be predicated on reckless disregard for the copyright owner's rights or actual or constructive knowledge that one's actions constitute infringement. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799-800 (4th Cir. 2001).

Here, AHRN's willful infringement is plain. AHRN knew that it did not have permission to use Preferred Carolinas' photographs. It had to clandestinely scrape the photographs from www.realtor.com to avoid detection. It ignored dozens of cease-and-desist letters from MLSs and brokers, including Preferred Carolinas. And it relied on the analysis of Mr. Cardella—a non-lawyer—when it concluded that it might or might not be infringing others' copyrights. It displayed millions of listings and photographs belonging to others, not knowing if it had permission from anyone to use them. (Cardella Dep. at 243-44.) AHRN viewed its copyright infringement as an act of civil disobedience. *Id.* at 325. Even after two federal-court injunctions were entered against it, AHRN continued using photographs for which it did not have a license. *Id.* at 247. AHRN made a deliberate decision to assume the risk of copyright infringement rather than going out of business, and it should now be held responsible for that uninformed, reckless and unlawful decision. As a matter of law, Preferred Carolinas is entitled to enhanced statutory damages under Section 504(c)(2) of the Copyright Act, the exact amount of which will be determined at trial.

VI.     **CONCLUSION**

AHRN willfully infringed Preferred Carolinas' copyrights. Preferred Carolinas respectfully requests that the Court grant partial summary judgment in its favor on the issues of liability and enhanced damages. Preferred Carolinas also asks for a permanent injunction requiring that AHRN cease directly or indirectly infringing any of Preferred Carolinas' copyrights, whether or not now in existence and whether or not such copyrights have been registered.

Respectfully submitted, this the 31st day of January, 2014.

BARNES & THORNBURG LLP

BY:     /s/ Scott E. Murray
        Robert D. MacGill (robert.macgill@btlaw.com)
        Scott E. Murray (smurray@btlaw.com)
        Barnes & Thornburg LLP
        11 S. Meridian St.
        Indianapolis, IN 46204
        Telephone: (317) 236-1313
        Facsimile: (317) 231-7433

        /s/ Bryan T. Simpson
        Bryan T. Simpson (bsimpson@tcdg.com)
        NC Bar No. 20136
        Teague, Campbell, Dennis & Gorham, LLP
        Post Office Box 19207
        Raleigh, NC  27619-9207
        Telephone: (919) 873-0166
        Facsimile: (919) 873-1814

        *Attorneys for Preferred Carolinas Realty, Inc.*

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed this 31st day of January, 2014. Notice of this filing will be sent to all parties listed below by operation of the Court's electronic filing system, which the parties may access through the Court's system.

CHRISTOPHER R. MILLER    c.miller@neighborcity.com

DAVID MATTHEW WILKERSON    dwilkerson@vwlawfirm.com

LARRY STEPHEN MCDEVITT    lmcdevitt@vwlawfirm.com, dwilkerson@vwlawfirm.com, hgoldstein@vwlawfirm.com, lpf@farkastoikka.com, sgarrett@vwlawfirm.com

RICHARD S. TOIKKA    rst@farkastoikka.com

RUSSELL O. PAIGE    rop@farkastoikka.com

*s/Scott E. Murray*

# EXHIBIT A

Screenshot from Preferred Carolinas website for the Carolinas Avenue Property:



Screenshot from AHRN's www.neighborcity.com for the Carolinas Avenue Property:

   

