## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PREFERRED CAROLINAS REALTY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 1:13-cv-00181 |
| | ) |
| AMERICAN HOME REALTY NETWORK, INC., | ) |
| D/B/A NEIGHBORCITY.COM, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## AMERICAN HOME REALTY NETWORK, INC.'S OBJECTIONS TO MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO COMPEL

# TABLE OF CONTENTS

Page

I.    NATURE OF THE MATTER BEFORE THE COURT.................... 1

II.   STATEMENT OF FACTS......................................................... 2

III.  QUESTIONS PRESENTED...................................................... 4

IV.   STANDARD OF REVIEW........................................................ 4

V.    ARGUMENT......................................................................... 4

      A.   The Magistrate Judge Erred in Disallowing Discovery of
           Information Relevant to AHRN's Defenses and Not Unduly
           Burdensome to PCR............................................................ 4

           i.    The Discovery Requested by AHRN is Relevant................. 4

           ii.   The Discovery Requested by AHRN Does Not Impose
                 Undue Burden on PCR.................................................. 6

      B.   The Magistrate Judge Erred by Effectively Striking AHRN's
           Affirmative Defense of Copyright Misuse Without Either Notice
           to AHRN or Opportunity to Be Heard................................... 8

           i.    AHRN's Defense of Copyright Misuse Was Not Subject to a
                 Motion to Dismiss or a Motion to Strike, and a Substantive
                 Ruling on the Merits of the Defense was Improper............... 8

           ii.   PCR's Agreements with MLSs and Other Brokers to Enforce
                 Copyrights Deserve Antitrust Scrutiny, and the Court Should
                 Allow Discovery on AHRN's Copyright Misuse Defense.......... 12

      C.   AHRN's Motion to Compel was Substantially Justified and the
           Award of Fees and Costs to PCR was in Error........................... 17

VI.   CONCLUSION....................................................................... 19

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PREFERRED CAROLINAS REALTY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 1:13-cv-00181 |
| ) | |
| AMERICAN HOME REALTY NETWORK, INC., ) | |
| D/B/A NEIGHBORCITY.COM, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## AMERICAN HOME REALTY NETWORK, INC.'S OBJECTIONS TO MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO COMPEL

American Home Realty Network, Inc. ("AHRN") respectfully objects to the Memorandum Opinion and Order of the Magistrate Judge ("Order") (Doc. 66) denying AHRN's Motion to Compel ("the Motion") and ordering AHRN to pay fees and costs of Preferred Carolinas Realty, Inc. ("PCR").

## I.    NATURE OF THE MATTER BEFORE THE COURT

AHRN limits this objection to the denial of the Motion to Compel production of documents responsive to AHRN's Requests for Production Nos. 7, 12, 13, and 14, (Order at 9-13), and to the award of costs and attorneys' fees, (Order at 17-18).  AHRN does not object to the Court's ruling regarding an additional 30(b)(6) witness, (Order at 14-17), or AHRN's Requests for Production Numbers 2 and 11,  (Order at 7).

## II.    STATEMENT OF FACTS

On December 31, 2013, AHRN filed the Motion.  (Docs. 42, 43, 44.)  On January 24, 2014, PCR filed its Response and supporting exhibits.  (Doc. 48.)  On February 10, 2014, AHRN filed its Reply and supporting Declaration and Exhibits.  (Doc. 59.)

AHRN's objections to the Order relate to the following Requests for Production ("RFP") served on PCR by AHRN on September 25, 2013:

> Request No. 7: Copies of all of PCR's End User License Agreements with any MLS entity, including but not limited to the End User License by which PCR allegedly licenses its copyrights in the photographs to Carolina MLS as mentioned in the Howard Declaration [Doc. 19-3] at Paragraph 7.
>
> Request No. 12: Any and all documents comprising or relating to your communications with NAR regarding PCR's copyrights or this lawsuit.
>
> Request No. 13: Any and all documents comprising or relating to your communications with American Home Services of America, Inc., regarding PCR's copyrights and/or this lawsuit.
>
> Request No. 14: Any and all documents comprising or relating to your communications with third parties regarding PCR's copyrights or this lawsuit.

(Doc. 43, Ex. A.)

In response to these Requests, PCR objected to RFP No. 7 as "overly broad, unduly burdensome" and "not reasonably calculated to lead to the discovery of admissible evidence."  (Doc. 43, Ex. B.)  PCR offered to produce any "End User License Agreements with Carolinas MLS that apply to the photographs identified in the Complaint," but refused to produce other agreements with Multiple Listing Services ("MLSs"). (*Id.*)

As to Request Nos. 12, 13, and 14, PCR objected to each as "overly broad, unduly

2

burdensome," "not reasonably calculated to lead to the discovery of admissible evidence," "vague, ambiguous and insufficiently particular," as well as standard privilege objections. (*Id.*) At a meet and confer between the parties, PCR refused to produce any documents responsive to the requests, and offered no compromise. (Doc. 43 at 8.)

On November 4, 2013, the parties agreed on the terms of a Stipulation on the Production of Electronically Stored Information ("ESI Stipulation"), which was filed on November 13, 2013. (Doc. 36.) Pursuant to PCR and AHRN's agreement to share ESI search terms, AHRN sent search terms to PCR on November 19, 2013. (Doc. 43 at 3.) On November 25, 2013, PCR produced its first and only set of documents. (Doc. 43, Ex. D.) PCR's document production did not include any electronic data that was obtained using AHRN's search terms. Further, PCR identified no responsive custodians, searched no electronic databases, and made no attempt to ascertain how many documents, if any, were responsive to AHRN's request. (Doc. 43 at 11.) PCR did not even search electronic locations for documents responsive to AHRN's RFP Nos. 7, 12, 13, and 14.[1] (*Id.*) PCR did not, has not, and cannot present any evidence to the Court that RFP Nos. 7, 12, 13, or 14 were burdensome because it has not yet even attempted to locate the relevant universe of documents. Finally, PCR never moved to dismiss or strike AHRN's defense of copyright misuse.[2]

---

[1] AHRN, on the other hand, searched its electronic documents for the term "copyright" at the request of PCR, and then produced over 200,000 pages of electronic documents yielded from PCR's search terms. (Doc. 59 at 3.)

[2] AHRN's intent to assert an affirmative copyright misuse defense is clearly set out in its Answer. (Doc. 11 at p. 5).

## III. QUESTIONS PRESENTED

1.      Did the Magistrate Judge err in disallowing discovery of information relevant to an affirmative defense?

2.      Did the Magistrate Judge err by effectively striking AHRN's affirmative defense of copyright misuse without either notice to AHRN or opportunity to be heard?

3.      Was the Order granting costs and fees to PCR in responding to AHRN's Motion to Compel clearly erroneous and contrary to law?

## IV. STANDARD OF REVIEW

When reviewing an order of a Magistrate Judge on a non-dispositive motion, a District Court may reverse the ruling if it is "clearly erroneous or contrary to law."  Fed. R. Civ. Pro. 72(a).  When a Magistrate Judge makes a dispositive ruling, however, the District Court's review of objections is *de novo*.  Fed. R. Civ. P. 72(b)(3).  Because the Order in this case effectively strikes AHRN's copyright misuse defense by disallowing discovery on the defense it is a dispositive ruling and the Court should consider the matter *de novo*.

## V. ARGUMENT

### A. The Magistrate Judge Erred in Disallowing Discovery of Information Relevant to AHRN's Defenses and Not Unduly Burdensome to PCR.

#### i.      The Discovery Requested by AHRN is Relevant.

Statutory and case law strongly favors discovery of information relevant to a party's defenses.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature,

custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule 26 official notes state that the "purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Fed. R. Civ. P. 26, Notes to 1946 Amendments, subd. b (citing *Engl v. Aetna Life Ins. Co.*, C.C.A.2, 1943, 139 F.2d 469; *Mahler v. Pennsylvania R. Co.*, E.D.N.Y.1945, 8 Fed.Rules Serv. 33.351, Case 1.) The Rules "make clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence." Fed. R. Civ. P. 26, Notes to 1946 Amendments, subd. b.

Rule 26(b)(1) envisions two levels of relevancy—relevancy to any party's claims or defenses and relevancy to the subject matter involved in the action. Relevancy to claims or defenses is "narrower than relevancy to subject matter as is evident from the Advisory Committee Notes." *Walker v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 5:11-0529, 2012 WL 1155140, at * 8 (S.D. W. Va. Apr. 5, 2012). In amending Rule 26 in 2000, the Advisory Committee wrote as follows:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. . . .

Fed. R. Civ. P. 26 Notes to 2000 Amendment, subd. (b)(1).  In this case, the discovery

sought by AHRN was relevant to AHRN's copyright misuse defense.  Relevant

information in this case includes not only the process by which PCR determined to file

suit against AHRN, but also the nature of its contractual obligations with Carolina MLS

or any MLS, limitations placed on PCR by any MLS as to PCR's use of its copyrighted

material, and the extent to which any potentially anti-competitive restrictions or

limitations may be prevalent within the industry.  Additionally, the extent to which

PCR's communications with NAR or HomeServices of America reveal a coordinated

effort to seek copyright protection for the sole purpose of filing lawsuits designed to drive

competitors out of the marketplace is clearly relevant to copyright misuse.  In short,

AHRN's requests more than satisfied the relevance requirements of the Federal Rules.

> ### ii.  The Discovery Requested by AHRN Does Not Impose Undue Burden on PCR.

Courts can limit the discovery of information otherwise allowed by these rules in limited

circumstances.  These include:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain
> the information by discovery in the action; or

> (iii) the burden or expense of the proposed discovery outweighs its
> likely benefit, considering the needs of the case, the amount in
> controversy, the parties' resources, the importance of the issues at
> stake in the action, and the importance of the discovery in resolving
> the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  None of these factors favor limiting AHRN's

discovery in this case.  First, PCR has not alleged, and the Court did not find, that

the discovery is unreasonably cumulative or duplicative.  Second, AHRN has been

denied the discovery requested by PCR.  Third, PCR did not present any evidence

or argument of a burden related to producing documents responsive to AHRNs

RFP Nos. 7, 12, 13, and 14.  Further, PCR produced no evidence of the expense of

the proposed discovery.

RFP Nos. 7, 12, 13, and 14 were narrowly tailored requests for either particular

agreements or communications concerning copyrights.  Given that PCR has only

registered a small number of copyrights[3], and many of those copyrights are at issue in this

case, it is likely that PCR's production of documents would be small and relevant to the

claims in this case.   Moreover, PCR made no effort to determine the extent of the burden

involved in responding to these requests, and presented no evidence in the record of any

burden undertaken in searching and producing what was, in AHRN's view, likely a small

number of documents.  Finally, although the Order suggests that AHRN's failure to limit

its request as to a timeframe creates unwarranted burden on PCR (Order at 13), the nature

of the requests is self-limiting in time because PCR did not register any copyrights prior

to 2011.   There is unlikely to be any responsive information significantly predating the

---

[3] A search of public records available from the United States Copyright Office reveals
that PCR has registered thirty-two (32) copyrights, and that all of its copyrights have
been registered since 2011. Public Copyright records, http://www.copyright.gov/; Follow
the "Search Records" hyperlink to http://www.copyright.gov/records/; Follow the
"Search the Catalog" hyperlink; search Preferred Carolina.

earliest copyright, and as such, these requests do not reach the level of burdensome.

In contrast, the needs of the case, the issues at stake, and the amount in controversy heavily favor the production of the documents to AHRN. This lawsuit jeopardizes the legality of AHRN's entire business model within the context of the real estate brokerage business. A fair consideration of the possibility of copyright misuse is essential to understanding whether AHRN has fallen victim to an anticompetitive scheme calculated to drive competitors of PCR and MLSs out of the marketplace. As to the amount in controversy, PCR is requesting statutory damages of up to $150,000 each for 72 statutory violations, for total damages of over $10,000,000.00, and is asking this number to be trebled, to over thirty million dollars, in addition to attorneys' fees and costs. In light of PCR's potential recovery, the discovery sought by AHRN is neither disproportionate nor unreasonable.

## B. The Magistrate Judge Erred by Effectively Striking AHRN's Affirmative Defense of Copyright Misuse Without Either Notice to AHRN or Opportunity to Be Heard.

### i. AHRN's Defense of Copyright Misuse Was Not Subject to a Motion to Dismiss or a Motion to Strike, and a Substantive Ruling on the Merits of the Defense was Improper.

In evaluating AHRN's Motion to Compel RFP Nos. 7, 12, 13, and 14, the Order focused on AHRN's copyright misuse defense. The Court cites a number of cases to justify disallowing discovery regarding a copyright misuse defense. These cases are distinguishable, however, because each case was at a significantly different procedural posture than the present case. With one exception, every case cited by the Magistrate

8

Judge was a ruling upon a motion to dismiss or a motion to strike. None of the cases cited in the Order involved a motion to compel discovery relevant to a copyright misuse defense that the plaintiff had not sought to dismiss or strike. (Order at 11-13.) Here, AHRN's copyright misuse defense has never been the subject of a motion to dismiss or motion to strike and the Court's determination to preclude any discovery on this valid defense is tantamount to a *sua sponte* dismissal.

The Order correctly cites *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990), as a case in which the Fourth Circuit recognized copyright misuse as a valid defense to copyright infringement. *Lasercomb* is applicable to the facts in this case. *Lasercomb* involved licensing of copyrights under onerous terms. Similarly, in this case, individual agents with at least apparent authority licensed to AHRN any rights in PCR's photographs. PCR then attempted to revoke the licenses and refused to license photographs or copyrights to AHRN on any terms. (*See* Docs. 1-28, 1-29, 19-2.) *Lasercomb* remains controlling authority in the Fourth Circuit, validating AHRN's affirmative copyright misuse defense.

The Court then cites a number of cases that are distinguishable from the facts of this case. First, the Court cites *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691 (D. Md. 2012), *modified on clarification,* 904 F. Supp. 2d 530 (D. Md. 2012), *aff'd*, 722 F.3d 591 (4th Cir. 2013), for the proposition that "[e]ven if . . . [Plaintiff] was collectively enforcing its copyrights with other MLSs, that would not, alone, amount to copyright misuse. The decision in *Metro* was in the context of Plaintiff's

9

request for a preliminary injunction before any discovery had taken place between the parties, and the standard of review was "likelihood of success on the merits." *See id.* The *Metro* court did not say that the defendant was not entitled to discovery on its copyright misuse defense. Rather, the Metro court has allowed discovery on AHRN's copyright misuse defense. The *Metro* court did not rule on the merits of AHRN's copyright misuse defense, nor did it place any limits on discovery related to the copyright misuse defense. *See id.*

Similarly, the other decisions cited by the Court did not involve motions to compel or similar facts. In *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453,459 (E.D.N.Y. 2007), plaintiffs moved to strike defendant's late added affirmative copyright misuse defense. The *Lindor* court concluded (after briefing on the <u>motion to strike</u> the misuse defense) that there were no potential anticompetitive effects of record companies enforcing their copyrights in music against individuals for copyright piracy. *Id.* at 459. In *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1538-39 (S.D.N.Y. 1991), cited by the *Lindor* court, the defendant completed a trial on its copyright misuse defense and presumably was not denied discovery on its defense.

In *Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945, 955-56 (W.D.N.C. 2000), the Court granted the plaintiff's <u>motion to strike</u> Defendant's copyright misuse defense. Also, *Everco Indus., Inc. v. O.E.M. Prods. Co.*, 362 F. Supp. 204, 206 (N.D. Ill. 1973), is inapplicable to the facts of this case. *Everco* did not involve a copyright misuse defense. In addition, Defendant's discovery request

was rightfully denied in *Everco* because Defendant requested "all contracts and correspondence" between Plaintiff and seven major corporations with whom it engaged in business. *Id.* at 205. AHRN did not make any such "carte blanche" requests. Finally, the Magistrate Judge cites *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007), for the Supreme Court's note that "antitrust discovery can be expensive." Again, *Twombly* was decided upon a motion to dismiss.

With the exception of *Everco,* every case relied upon in the Order involved a motion to strike, motion to dismiss, or a fully developed factual record. Here, AHRN had no notice that its defense of copyright misuse was in jeopardy and that it was not entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's . . . defense." Fed. R. Civ. P. 26(a). AHRN had no opportunity either to develop and explain its defense of copyright misuse, or to possibly amend the defense in its Answer. Instead, AHRN's defense has effectively been struck and/or dismissed, without motion by PCR, as a result of the Magistrate Judge disallowing discovery on this defense. *See Microsoft Corp. v. Lutian***,** 10 cv1373, 2011 U.S. Dist. LEXIS 109918, at *4, 12 (N.D. Ohio Sept. 27, 2011) (The court denied plaintiff's motion to strike defendant's copyright misuse defense, because "motions to strike are generally disfavored" and because plaintiff filed the motion to strike "before the close of discovery.") Here PCR did not even file a motion to strike, but the Court effectively struck the defense and precluded the very discovery that the *Microsoft* court afforded the defendant the opportunity to complete.

## ii. PCR's Agreements with MLSs and Other Brokers to Enforce Copyrights Deserve Antitrust Scrutiny, and the Court Should Allow Discovery on AHRN's Copyright Misuse Defense.

As stated by a report of the Federal Trade Commission and the Department of Justice in 2007, "Given the size of the real estate industry, any restraints on competition in real estate brokerage will have significant adverse consequences for consumers." (Doc. 59, Ex. B at 1.) "A number of developments have raised competitive concerns," including, "anticompetitive agreements among brokers, and industry practices that impede competition. These practices can lead to substantial consumer harm through reduced choice of real estate brokerage services, higher fees, and limitations on the ability to access information about real estate listings." (*Id*. at 2.) AHRN, through its Requests for Production, was attempting to discover what it alleges are anticompetitive agreements among brokers and MLSs to use copyright enforcement as the means to achieve anticompetitive and illegal ends.

As the FTC and DOJ said:

> The MLS is a local or regional joint venture of real estate brokers, typically operated by a local group of brokers affiliated with the [National Association of Realtors] ("NAR"), who pool and disseminate information on homes available for sale in their particular geographic areas. The MLS combines its members' home listings information into a database, usually in electronic form. The MLS then makes these data available to all brokers who are members of the MLS.

(*Id*. at 10.) This close cooperation between local or regional real estate brokers, typically further joined as a member of the trade organization NAR, operating a joint venture with rules for members, immediately raises anticompetitive concerns. One FTC and DOJ

12

panelist described an MLS as a "club" that can limit membership and access to MLS listings to firms that conduct business in a particular manner, thereby limiting consumer choice. (*Id.* at 11.) "This panelist, an economist, stressed that when competitors cooperate, as in an MLS, the rules governing that cooperation and the conditions under which the cooperation occurs must be examined closely." (*Id.*)

> Because brokers usually set the rules for each others' participation in the MLS by agreement, it is possible for one dominant group of brokers to establish *MLS rules that favor them and disfavor other brokers who compete in a manner that they dislike*. *Such rules are illegal if they unreasonably restrict competition*, and the Agencies recently have challenged, as antitrust violations, MLS rules that unreasonably restrict competition by brokers who use alternative business models.

(*Id.* at 63 (emphasis added).) Here, AHRN alleges the same conduct the FTC and DOJ have warned about: that PCR, other brokerages, and MLSs have established agreements and rules relating to registration of copyrights in photographs and the licensing of those photographs, and these favor PCR, other favored brokers and MLSs, while disfavoring AHRN and possibly others.

PCR's and both MLSs' attempted revocation of licenses granted to AHRN by agents with apparent authority and their subsequent refusals to license their photographs have no pro-competitive benefits for consumers. Rather, the revocations and refusals are anti-competitive *per se*. (*See* Docs. 1-28, 1-29, 19-2.) To benefit its home sellers, PCR should wish for AHRN to publicize its customers' properties on AHRN's website to increase the number of sales of PCR's customers' properties. Showing its customers' properties on AHRN's national website to more potential purchasers clearly has pro-

competitive effects. PCR, however, does not want AHRN to do so. The only feasible motivation for this is that AHRN attempts to match potential buyers with highly rated buyers' agents, and not necessarily with PCR's agents. Therefore, PCR perceives that it may lose out on dual-representation of the buyer and seller, which has no pro-competitive effects. If a buyer finds a home on AHRN's website, the buyer does not pay a larger real estate commission than it would by locating the home on PCR's website or a PCR-affiliated MLS website. Instead, the buyer's agent agrees to receive a slightly reduced fee in return for a customer lead from AHRN, which receives a portion of that agent's fee. Nor does the home seller pay an increased commission for the sale of his home. The only party that possibly stands to lose money is the listing brokerage - in this case PCR and its broker co-conspirators - which hopes to represent both the buyer and seller of every home.

PCR has explained no pro-competitive reason for its refusal to allow its homes to be shown on AHRN's website. The anti-competitive effect is clear. The seller of a home has agreed with PCR as to the commission amount the seller will pay at the sale of the home. Therefore, sellers wish for their homes to be shown as widely as possible to potential sellers.

MLSs and brokers' joint conduct to limit listings have often been found to be facially anticompetitive and subject to a rule of reason analysis. *See United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1387 (5th Cir. 1980) (MLS denying membership to particular brokers); *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220–22

(7th Cir.1993) (excluding discount brokers from venue). Recently, the Sixth Circuit Court of Appeals held that an MLS violated § 5 of the FTC Act, and therefore, § 1 of the Sherman Act, by prohibiting Exclusive Agency listings and other nontraditional listings on the MLS from being distributed to public real-estate advertising websites through the MLS feeds. *Realcomp II, Ltd. v. F.T.C.*, 635 F.3d 815, 822 (6th Cir. 2011).

In *Realcomp II*, Realcomp (an MLS) and its associated brokers were trying to achieve what PCR and its associated MLSs are trying to achieve through their selective enforcement of copyrights. Realcomp and its member-brokers wanted to steer customers to "exclusive right to sell" listings by preventing public websites from advertising homes of sellers that used "exclusive agency" agreements. *Id.* at 821. Here, PCR is attempting to do the same thing by its selective enforcement of copyrights. In fact, if AHRN's Motion to Compel is allowed, AHRN suspects that it will learn through communication between PCR, MLSs, and NAR that the current strategy of selectively registering and enforcing copyrights against AHRN is an attempt to achieve the same ends prohibited by the FTC and the Court in *Realcomp II* by using different means.[4]

In *Realcomp II*, the FTC found "evidence showed that EA listings can be posted on some public websites, despite Realcomp's policies, but only by dual-listing with another MLS that does not impose similar restrictions." *Id.* at 830. Realcomp's website listing policy was anticompetitve, because

---

[4] Notably, PCR's copyright registration program began in 2011 after the FTC decision and Sixth Circuit *Realcomp II* decision.

'[L]istings [are] not ... distributed as widely as possible' due to the website policy, 'resulting in inefficient sales prices,' which is the same kind of economic harm caused by MLS exclusions. *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1580 (11th Cir.1991); *cf. Ind. Fed'n,* 476 U.S. at 461–62, 106 S.Ct. 2009 (holding that proof of higher prices is not required in the context of '[a] concerted and effective effort to withhold (or make more costly) information desired by consumers for the purpose of determining whether a particular purchase is cost justified'); *Polygram Holding, Inc.,* 416 F.3d at 37 ('[A]greements restraining autonomy in pricing and advertising impede the 'ordinary give and take of the market place.' '). In particular, the website policy—like exclusions found to be anticompetitive—'reduces the competition among brokers and could result in less competition for brokerage fees.' *Thompson,* 934 F.2d at 1580; *see Cantor v. Multiple Listing Service of Dutchess Cnty., Inc.,* 568 F.Supp. 424, 430 (S.D.N.Y.1983) (MLS rules 'restrict[ed] [brokers'] ability to advertise their services' in order to prevent brokers from 'obtain[ing] any competitive advantage'); *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 389, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ('[P]rice advertising surely relates to price.') (internal quotation marks omitted).

*Id.* at 831. This is why it is important for PCR to produce its copyrights agreement and communications regarding copyrights with all MLSs, so AHRN can evaluate the anticompetitive effects of the copyright licensing and enforcement provisions if they differ between MLSs and other brokers.

In summary, AHRN believes discovery will reveal that PCR, other brokers, and MLSs are working in concert by entering into anticompetitive licensing agreements regarding copyrights. In order to assert a copyright misuse defense, AHRN does not need to show an antitrust violation. *See Lasercomb,* 911 F.2d at 978 ("a misuse need not be a violation of antitrust law in order to comprise an equitable defense to an infringement action.") These licensing agreements provide PCR, other favored brokers, and their MLSs a free license to use photographs and these parties agree in turn not to license photographs to companies or individuals that they disfavor for anticompetitive reasons,

thereby maintaining market share in their geographical area and preventing income erosion. To enforce this agreement, AHRN believes PCR, the MLSs, and other brokerages coordinated or communicated a plan to obtain a limited number of copyrights for use as a tool to drive competitors out of the marketplace by filing infringement litigation and seeking statutory damages. AHRN suspects that copyright agreements among PCR, MLSs and other brokerages request each member to deny licenses to AHRN, but to provide licenses to each other at no cost. AHRN should be entitled to discovery in support of its defense. The Order of the Magistrate Judge was clearly erroneous or contrary to law.

### C. AHRN's Motion to Compel was Substantially Justified and the Award of Fees and Costs to PCR was in Error.

When a motion to compel is denied, the Court must, *after giving an opportunity to be heard*, require payment of the reasonable expenses incurred in opposing the motion. Fed. R. Civ. P. 37(a)(5)(B); *see also Guessford v. Penn. Nat. Mut. Cas. Ins. Co.*, No. 1:12CV260, 2013 WL 2242988, at *12 (M.D.N.C. May 21, 2013) (requiring payment of fees after a full and fair opportunity for argument at a hearing). However, the Court must not order this payment if the motion was substantially justified. Fed. R. Civ. P. 37(a)(5)(B). In this case, the Magistrate Judge's ruling with respect to cost shifting was clearly erroneous on two bases: (1) AHRN did not have an opportunity to be heard, and (2) AHRN's motion was substantially justified.

First, the Order states AHRN had its opportunity to be heard because PCR included a request for cost-shifting in its Response (Doc. 48 at 19) and AHRN did not

address this request in its Reply (Doc. 59). (Order at 18.) The Local Rules of Civil Practice, however, do not require this conclusion. Specifically, L.R. 7.3(k) recites the consequences for failure to file a brief or a response. Such a failure "shall constitute a waiver of the right thereafter to file such a brief or response . . . . " L.R. 7.3(k). Reply briefs, however, are not included in the L.R. 7.3(k) waiver provision. In fact, Reply briefs are optional filings under the Local Rules. *See* L.R. 7.3(h) ("A reply brief *may* be filed . . . ." (emphasis added)). In this case, it was not apparent to AHRN that the issue of cost-shifting was a "matter newly-raised in the response" that might have suggested a reply from AHRN, s*ee* L.R. 7.3(h), because PCR's request for cost-shifting was included only in the conclusion of its Response and without argument or discussion. The Court should instead have ordered AHRN to show cause why it should not pay PCR's reasonable expenses, thereby offering AHRN an opportunity to demonstrate that its motion was substantially justified. *See, e.g., Moore v. DAN Holdings, Inc.*, No. 1:12CV503, 2013 WL 1833557, at *9 (M.D.N.C. Apr. 30, 2013); *see also Carolina First Bank v. Stambaugh*, 275 F.R.D. 463, 465-66 (W.D.N.C. 2011) (where moving party did not file a reply brief and court denied motion to compel, moving party was required to show cause why it should not pay expenses).

Second, the Magistrate Judge should not have ordered cost-shifting because AHRN's motion was substantially justified. "A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Proa v. NRT Mid*

*Atlantic, Inc.*, 633 F.Supp.2d 209, 213 (D. Md. 2009) (citing *Decision Insights, Inc. v. Sentia Group, Inc.*, 311 Fed. Appx. 586 (4th Cir. 2009)); *accord Hodges v. First American Bank and Trust Co.*, 2012 WL 1077789, at *1 (W.D.N.C. 2012); *see also Hare v. Comcast Cable Comm. Mgmt., LLC*, No. 13-1896, 2014 WL 1284829, at *1 (4th Cir. April 1, 2014) (per curiam) (upholding cost-shifting award where motion to compel rested on "false and unreasonable" assertions). In this case, AHRN has asserted a viable affirmative defense, supported by controlling Fourth Circuit authority and bolstered by FTC and DOJ concerns regarding the role of MLS agreements in the real estate brokerage industry. The reasonable basis in law and fact for AHRN's request to take discovery as to its copyright misuse claims is set forth in the preceding sections. In these circumstances, cost-shifting should not have been allowed under Rule 37(a)(5)(B) and it was error for the Magistrate Judge to so order.

## VI. CONCLUSION

For the reasons stated, AHRN respectfully suggests that the District Court set aside the portions of the Magistrate Judge's Order discussed above and grant AHRN's motion to compel production of documents responsive to AHRN's RFP Nos. 7, 12, 13, and 14. Further, AHRN suggests that no order should issue requiring AHRN to pay costs and fees to PCR.

Date: April 14, 2014

Respectfully submitted,

THE VAN WINKLE LAW FIRM

*/s/ Larry S. McDevitt*
Larry S. McDevitt
State Bar No. 5032
David M. Wilkerson
State Bar No. 35742
Heather Whitaker Goldstein
State Bar No. 26194
11 North Market Street
Asheville, NC 28801
828-258-2991 (phone)
828-255-0255 (fax)
lmcdevitt@vwlawfirm.com (email)
dwilkerson@vwlawfirm.com (email)
hgoldstein@vwlawfirm.com (email)

FARKAS+TOIKKA, LLP

*/s/ Richard S. Toikka*
Richard S. Toikka (special appearance)
L. Peter Farkas (special appearance)
Russell O. Paige (special appearance)
1101 30th Street, NW, Suite 500
Washington, DC 20007
202-337-7200 (phone)
202-337-7808 (fax)
rst@farkastoikka.com (email)
lpf@farkastoikka.com (email)
rop@farkastoikka.com (email)

Christopher R. Miller (special appearance)
Chief Legal Officer & General Counsel
American Home Realty Network, Inc.
222 7th Street, 2nd Floor
San Francisco, California  94103
800-357-3321 (phone)
C.Miller@NeighborCity.com (email)

*Counsel for Defendant*
*American Home Realty Network, Inc.*

20

# CERTIFICATE OF SERVICE

I certify that on April 14, 2014, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the following:

Bryan T. Simpson
Teague, Campbell, Dennis & Gorham, LLP
P.O. Box 19207
Raleigh, NC 27619-9207
bsimpson@tcdg.com

Robert D. MacGill
robert.macgill@btlaw.com
Scott E. Murray
smurray@btlaw.com
Barnes & Thornburg LLP
11 S. Meridan Street
Indianapolis, IN 46204
Attorneys for Plaintiff

/s/Larry S. McDevitt
Larry S. McDevitt